Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/31/2020 08:11 AM CDT

State of Nebraska, appellee, v.
Jessica Jo Lang, appellant.

___ N.W.2d ___

Filed May 8, 2020.    No. S-19-275.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Mental Competency: Appeal and Error.** A trial court's determination of competency will not be disturbed on appeal unless there is insufficient evidence to support the finding. But a trial court's decision not to order a competency evaluation or hold a competency hearing is reviewed for an abuse of discretion.

3. **Effectiveness of Counsel: Appeal and Error.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

4. **Investigative Stops: Motor Vehicles: Time.** A lawful traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of the stop.

5. ____: ____: ____. When the mission of an investigative stop is addressing a suspected traffic violation, the stop may last no longer than is necessary to effectuate that purpose, and authority for the seizure ends when tasks tied to the traffic infraction are, or reasonably should have been, completed.

6. **Controlled Substances: Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** Because of marijuana's legal status as

contraband, a trained officer who detects the odor of marijuana emanating from a vehicle in Nebraska has firsthand information that provides an objectively reasonable basis to suspect contraband will be found in the vehicle.

7. **Constitutional Law: Search and Seizure.** Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

8. **Warrantless Searches: Motor Vehicles.** Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. Among the established exceptions to the warrant requirement is the automobile exception.

9. **Search and Seizure: Warrantless Searches: Probable Cause: Motor Vehicles.** The automobile exception to the warrant requirement applies when a vehicle is readily mobile and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle.

10. **Search and Seizure: Probable Cause: Words and Phrases.** Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found.

11. **Controlled Substances: Search and Seizure: Warrantless Searches: Motor Vehicles: Probable Cause.** Assuming a vehicle is readily mobile, the odor of marijuana alone provides probable cause to search the vehicle under the automobile exception to the warrant requirement.

12. **Search and Seizure: Motor Vehicles: Probable Cause.** If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. This includes all containers within the vehicle.

13. **Courts: Trial: Mental Competency.** The question of competency to stand trial is one of fact to be determined by the court, and the means employed in resolving the question are discretionary with the court. The trial court may cause such medical, psychiatric, or psychological examination of the accused to be made as it deems necessary.

14. **Mental Competency.** An explicit competency determination is necessary only when the court has reason to doubt the defendant's competence, and if proceedings do not provide the court with reason to doubt a defendant's competence, it does not err by not conducting a competency hearing.

15. **Trial: Pleas: Mental Competency.** A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.

16. **Mental Competency.** There are no fixed or immutable signs of incompetence, and a defendant can meet the modest aim of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies.

17. **Effectiveness of Counsel: Proof: Words and Phrases.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

18. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

19. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. The determining factor is whether the record is sufficient to adequately review the question. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

20. **Mental Competency: Final Orders.** A trial court's decision to overrule a motion for a competency evaluation is not a final, appealable order.

21. **Trial: Effectiveness of Counsel: Appeal and Error.** Trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel.

Appeal from the District Court for Hall County: Mark J. Young, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

After a stipulated bench trial, Jessica Jo Lang was convicted of possessing methamphetamine and marijuana. In this direct appeal, she argues the district court erred in overruling her motion to suppress and her motions seeking a competency evaluation. Lang, who is represented by new appellate counsel, also claims her trial counsel provided ineffective assistance. Finding no error, we affirm.

## I. BACKGROUND

### 1. Traffic Stop

On August 16, 2017, Officer Bret Renz of the Grand Island Police Department was on patrol. At approximately 10:45 p.m., his radar detected a vehicle traveling more than 10 miles per hour over the posted speed limit and he activated his patrol car's overhead emergency lights and initiated a traffic stop. The driver of the vehicle was Omega Fristoe, and the sole passenger was Lang.

Renz gathered Fristoe's information and returned to his patrol car to run a record check and complete a traffic citation. As he did this, Officer Chris Marcello of the Grand Island Police Department arrived on the scene to assist.

After Renz completed the citation form, both officers approached Fristoe's vehicle. Renz approached on the driver's side, and Marcello approached on the passenger's side. The front passenger window was rolled down 4 to 6 inches, and as Marcello approached, he detected an odor of marijuana coming from the passenger window. He saw Lang look up at him and then reach into her purse. He watched Lang get a cigarette from her purse and light it, after which Lang blew smoke around the cabin of the vehicle and then continued to "go through her purse."

Marcello got Renz' attention, and the officers met at the back of the vehicle to speak privately. At that point, Renz had not issued the citation to Fristoe. Marcello told Renz he smelled marijuana coming from the passenger window, and

the officers decided to expand their investigation. Renz placed his ticket book, with the citation still attached, on the trunk of Fristoe's vehicle, and then the officers reapproached the vehicle and asked the occupants to step out. Both Fristoe and Lang complied.

When Lang stepped out of the vehicle, she brought her purse with her. She was directed to place the purse on the hood of Fristoe's vehicle, which she did. The officers told Fristoe and Lang that the odor of marijuana had been detected coming from inside their vehicle. During the course of the investigation, Marcello searched Lang's purse and discovered a green leafy substance in a baggie that field-tested positive for marijuana, a white crystalline substance in a baggie that field-tested positive for methamphetamine, some nonnarcotic pills, and drug-related paraphernalia.

## 2. Motion to Suppress

Lang was charged with (1) possession of a controlled substance, methamphetamine (a Class IV felony); (2) possession of marijuana, less than an ounce (an infraction); and (3) possession of drug paraphernalia (an infraction). She pled not guilty.

Lang filed a motion to suppress the evidence found in her purse, arguing it was obtained as the result of an unconstitutional search. At the suppression hearing, both Renz and Marcello testified to the events as summarized above. In addition, Renz testified that before Marcello alerted him to the odor of marijuana coming from the passenger window, he had not smelled marijuana either time he approached the driver's side of the vehicle.

At the conclusion of the evidence, the district court overruled Lang's motion to suppress. It found there was probable cause for the traffic stop because the vehicle was observed speeding. It reasoned the smell of marijuana coming from inside the vehicle gave the officers probable cause for a warrantless search of the vehicle and containers in the vehicle, including Lang's purse. The court found Marcello's testimony

about smelling marijuana coming from the passenger window was credible, and it rejected Lang's argument to the contrary. Lang's case was set for trial.

## 3. Trial

### (a) First Request for Competency Evaluation

On the morning of September 24, 2018, Lang appeared in court with her attorney for jury selection. Outside the presence of the prospective jurors, Lang's counsel told the court he was concerned that Lang's emotional state may interfere with jury selection and trial. The court construed this as an oral motion for a competency evaluation, and it took the matter up on the record.

No evidence was offered, but Lang's attorney informed the court that Lang suffered from post-traumatic stress disorder as a result of a prior work-related assault and that she had been unable to afford her anxiety medication for more than a year. Counsel explained that Lang had been frightened during all of her court appearances, but that her emotional state that day was "extreme." Counsel told the court that Lang "does understand what is going on and understands what we are saying," but that he was concerned about her sobbing in court, explaining:

I am having trouble getting communication back from her that I understand or that the jury will understand in part due to her inability to control her depression.

She also has informed me that for the past couple three weeks, she has seriously considered issues of suicide and self-harm because of this situation and her lack of medication. She has not known how to resolve it.

She states to me that she has in fact sought help from governmental entities in regards to her mental health, but because she is pending a worker's compensation claim against the State of Nebraska, those entities have said that the State should be responsible for paying that and they

have not provided treatment. Her worker's comp trial is not scheduled for another couple of months.

. . . .

. . . Your Honor, I think if we were to go to jury selection and trial today, I don't believe the jury would be able to get past the emotional condition that my client is in for purposes of actually addressing and listening to the facts that may be presented at the time of trial or that they would be able to even understand Ms. Lang should she elect to testify, if she was able to testify at all.

The State took no position on the issue other than advising it was ready for trial. The district court, with counsel's permission, spoke with Lang directly:

THE COURT: Ms. Lang, we're here today to select a jury that will ultimately decide whether or not you are guilty or not guilty of the charges that have been filed against you. Do you understand that Ms. Lang?

THE DEFENDANT: Yes.

THE COURT: Ms. Lang, it's important that the jury reach a decision based upon the facts of the case and not their impressions, positive or negative, about you or anyone else. Do you understand that?

THE DEFENDANT: Yeah.

THE COURT: Ms. Lang, will you control yourself during the courtroom proceedings?

THE DEFENDANT: I can try my best. I apologize.

THE COURT: Ms. Lang, are there any accommodations that the Court can provide that would allow you to calm yourself?

THE DEFENDANT: No.

. . . .

THE COURT: At this point, it appears that Ms. Lang understands the nature of these proceedings and that Ms. Lang suffers, by her statements and by counsel's statements, from some traumatic issues that don't involve this case.

I find Ms. Lang is competent to proceed to trial. We will attempt at least to begin voir dire today as the second case to be chosen. We'll see how things go.

I'll be willing to listen to any comments by either counsel.

Our record does not include jury selection, but it does show that the next day, the district court commented favorably on Lang's composure during jury selection.

### (b) Second Request for
Competency Evaluation

On the first day of trial, outside the presence of the jury, the State requested a reciprocal order of witness sequestration, which the court granted. Fristoe, who was present in the courtroom and a possible witness for the defense, was told he would have to step out once the trial began. At that point, Lang covered her face and began sobbing. Lang's counsel told the court that Fristoe was a strong emotional support for Lang, who was still having anxiety issues.

The court spoke again with Lang about the importance of a fair trial and controlling her emotions and behavior during trial. Lang replied to the court, "I cannot control my mental illness. I am sorry." The court replied:

I don't mean to belittle your emotional situation, but I have not received any evidence that would support a claim that you cannot carry on appropriately or behave yourself.

I would note you did a great job at jury selection yesterday. I would note that no tears appear to be falling off when you are making the sobbing noises.

Lang's counsel then offered exhibit 8, a psychological evaluation from December 2014 conducted as part of Lang's workers' compensation case. The exhibit was received without objection. The State again advised the court it was ready to try the case and opposed additional delays.

The court asked Lang's counsel to clarify whether he was seeking a continuance or seeking a competency evaluation. Counsel replied:

[R]ight now, I do not know — well, how can I put this — if Ms. Lang can understand what's going on.

I believe that her emotional condition, her anxiety reaction, and her depression have made it such that she cannot control her physical condition. As she has presented in the courtroom, it's making it difficult to verbally communicate and appropriately provide an appearance to the jury which may jeopardize their ability to render an impartial decision. That's my concern.

The court asked again, "[A]re you asking for a competency evaluation, [counsel]?" to which counsel replied, "I will ask for a competency evaluation to see if she's capable of participating in her current psychological condition." The court took a recess to review exhibit 8 and then went back on the record and made the following ruling outside the presence of the jury:

Based upon review of Exhibit 8 and the Court's observations from yesterday and today, I am overruling the motion for a competency evaluation. There's nothing in the record indicating Ms. Lang is incapable of understanding the proceedings or communicating with counsel.

I will, however, in an attempt to accommodate Ms. Lang, continue this matter until one p.m. so that Ms. Lang may have a chance to get some fresh air and to come back and hopefully be ready to participate or be ready to be attentive during the trial of this case.

. . . .

Ms. Lang, this is an unusual step, but I am giving you a chance to take a little more time to compose yourself. In reviewing Exhibit 8, the mental health reports from three and four years ago, it appears that you have had some coping skills you need to be utilizing.

### (c) Change of Plea

When the parties returned at 1 p.m. to begin trial, Lang's counsel advised that his client wanted to enter a no contest plea to the charges in the information. Lang confirmed that was her desire.

The court went through the standard plea colloquy with Lang, and Lang consistently indicated that she understood her rights and the consequences of her pleas. After the State recited the factual basis, the court asked Lang whether she understood that if the court accepted her pleas, she would be giving up her right to appeal the overruling of her motion to suppress. Lang indicated she was not aware of that fact and told the court it may affect her decision. A recess was taken so Lang could talk with her attorney.

After the recess, Lang's counsel advised the court that in order to preserve her right to appeal the suppression ruling, Lang now wanted to withdraw her no contest pleas, enter not guilty pleas, waive a jury, and have the matter tried to the bench on "the facts as submitted to the Court in the hearing on the motion to suppress." Lang confirmed that was how she wanted to proceed.

The court allowed Lang to withdraw her no contest pleas and enter not guilty plea and then discussed the waiver of a jury trial with Lang. Lang stated she had discussed the matter with her attorney and wanted to waive a jury trial. She told the court that no one had made any threats, used any force, or made any promises to get her to waive a jury. The court accepted Lang's jury waiver, expressly finding it was made freely, voluntarily, knowingly, and intelligently. The jury was dismissed, and the matter proceeded immediately to a bench trial.

### (d) Stipulated Bench Trial

The parties stipulated that the court should take judicial notice of the evidence presented at the motion to suppress hearing and that the court should consider it as evidence in the bench trial. Lang's counsel renewed his objection to the evidence seized from Lang's purse on the ground it was obtained

through an unconstitutional search, and the objection was overruled. The State then offered, without objection, a copy of the laboratory report containing test results for the substances found in Lang's purse, and the parties stipulated that one of the items described in the laboratory report was the white crystalline substance found in Lang's purse, which tested positive for methamphetamine, weighing 3.5 grams.

After the presentation of evidence, the district court found the State had met its burden of proof as to counts I and II of the information and found Lang guilty. The court found the State had failed to prove count III, possession of drug paraphernalia, and dismissed that count. The court ordered a presentence investigation and asked the parties whether they wanted to request "any other . . . evaluations." The State and Lang both declined. Lang was ordered to appear at sentencing on February 5, 2019.

### (e) Sentencing and Third Request for Competency Evaluation

Lang did not appear for sentencing on February 5, 2019, but new defense counsel appeared on her behalf and requested a continuance. Sentencing was continued to February 14.

At the sentencing hearing, Lang's new counsel moved for a competency evaluation, arguing he did not think Lang had been able to effectively assist her prior counsel. The State argued that a competency evaluation was unnecessary and opposed a continuance for that purpose.

In support of the request for a competency evaluation, defense counsel asked the court to take judicial notice of the presentence investigation report and offered exhibits 10 and 11, both of which had been prepared in connection with Lang's workers' compensation case. Exhibit 10 was a medical report dated October 20, 2018, which summarized Lang's diagnoses of generalized anxiety disorder, post-traumatic stress disorder, and major depressive disorder. Exhibit 11 was a report of psychological testing performed on September 18, 2018, which generally agreed with the diagnoses set forth in exhibit 10 and

added diagnoses of panic disorder without agoraphobia and of avoidant personality disorder. Exhibits 10 and 11 were received without objection.

After reviewing the exhibits, the district court denied Lang's third motion for a competency evaluation. The court acknowledged evidence of Lang's traumatic work-related injury and her mental health diagnoses. But it also observed that throughout the criminal proceedings, Lang had been able to confer with counsel and make decisions regarding her defense, including the decision to withdraw her pleas of no contest and proceed with a stipulated bench trial to preserve her right to appeal the suppression ruling and her decision to hire new counsel for the sentencing phase. The court concluded that Lang understood the nature of the proceedings and her rights within those proceedings and that a formal competency evaluation was not necessary.

After an opportunity for allocution, Lang was sentenced to 12 months' probation on count I and was fined $300 on count II. She timely appealed, and we moved the appeal to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Lang assigns that the district court erred in (1) overruling her motion to suppress and (2) overruling her motions to determine competency. Lang also assigns that her trial counsel provided ineffective assistance in several respects.

## III. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.[1] When a motion to suppress is denied

---

[1] *State v. Hartzell*, 304 Neb. 82, 933 N.W.2d 441 (2019).

pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.[2]

[2] A trial court's determination of competency will not be disturbed on appeal unless there is insufficient evidence to support the finding.[3] A trial court's decision not to order a competency evaluation or hold a competency hearing is reviewed for an abuse of discretion.[4]

[3] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[5]

## IV. ANALYSIS

### 1. Motion to Suppress

In seeking to suppress evidence obtained from the search of her purse, Lang argues (1) the search was unlawful because it occurred after the purpose of the traffic stop had been completed and (2) the search of her purse was not justified by the automobile exception to the warrant requirement. We address each argument in turn and reject both.

### (a) Traffic Stop Not Impermissibly Extended

[4,5] A lawful traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete

---

[2] *Id.*

[3] *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

[4] See *State v. Cortez*, 191 Neb. 800, 218 N.W.2d 217 (1974) (failure to hold hearing on defendant's mental capacity to stand trial not abuse of discretion). See, also, *U.S. v. Turner*, 644 F.3d 713 (8th Cir. 2011) (district court's decision not to order competency evaluation or hold competency hearing reviewed for abuse of discretion).

[5] *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

the mission of the stop.[6] When the mission of an investigative stop is addressing a suspected traffic violation, the U.S. Supreme Court has instructed that the stop may last no longer than is necessary to effectuate that purpose, and authority for the seizure ends when tasks tied to the traffic infraction are, or reasonably should have been, completed.[7]

Here, Fristoe was stopped for exceeding the speed limit. Lang does not challenge the stop itself, but she argues that by the time the odor of marijuana was detected, the traffic stop was already complete.[8] We disagree.

The record shows that near the end of the traffic stop, while one officer was in the process of explaining the speeding citation to the driver but before the citation had been issued, the other officer smelled marijuana coming from the passenger window. The district court made an express factual finding that the odor of marijuana was detected before the traffic citation had been issued to the driver. This factual finding is supported by the record and is not clearly erroneous.

There is no evidence that officers took any longer than necessary to investigate the speeding violation or to prepare the resulting citation. And because the citation had not yet been issued to Fristoe, the purpose of the traffic stop had not yet been effectuated when the smell of marijuana was detected coming from the vehicle.

[6] Because of marijuana's legal status as contraband, a trained officer who detects the odor of marijuana emanating from a vehicle in Nebraska has firsthand information that provides an objectively reasonable basis to suspect contraband will be found in the vehicle.[9] The smell of marijuana provided officers with reasonable suspicion to expand the traffic stop

---

[6] *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018).

[7] *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015).

[8] See *id.*

[9] *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018).

to include investigation of possible criminal activity involving controlled substances.[10] Moreover, because the vehicle was readily mobile, the odor of marijuana alone provided officers with probable cause to search the vehicle under the automobile exception to the warrant requirement.[11] We discuss that exception next.

### (b) Automobile Exception

[7,8] Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.[12] Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.[13] Among the established exceptions to the warrant requirement is the automobile exception.[14]

[9-11] This exception applies when a vehicle is readily mobile and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle.[15] Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found.[16] Assuming the vehicle is readily mobile, the odor of marijuana alone provides probable cause to search the vehicle under the automobile exception to the warrant requirement.[17]

Lang does not contest that Fristoe's vehicle was readily mobile, and she generally concedes the officers had probable cause to search the vehicle after smelling marijuana. But Lang argues the automobile exception did not justify the warrantless

---

[10] See *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

[11] *Seckinger, supra* note 9.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

search of her purse, because when the purse was searched, it was no longer inside the vehicle. On this record, we are not persuaded that makes a difference.

[12] The U.S. Supreme Court has held that if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.[18] This includes all containers within the vehicle.[19]

The district court made a factual finding that Lang was seated inside the vehicle with the purse on her lap when the officer detected the smell of marijuana. Lang was seated in the passenger seat, and the smell of marijuana was coming from the passenger window. After noticing the smell, the officer observed Lang repeatedly "go through her purse," and when Lang was asked to step out of the vehicle, she brought the purse with her.

Officers instructed her to set the purse on the hood of the vehicle, and she complied. On this record, the location of the purse at the time it was searched does not change its character as a container that was inside the vehicle when officers developed probable cause to search the vehicle.[20] The district court properly overruled Lang's motion to suppress.

## 2. Competency Rulings

Lang's trial counsel moved for a competency evaluation three times during the course of this case—before jury selection, before the presentation of evidence, and before sentencing. She argues the court erred in overruling those motions.

---

[18] *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999).

[19] *Id*.

[20] See, e.g., *State v. Furrillo*, 274 Or. App. 612, 362 P.3d 273 (2015) (passenger's backpack properly searched after he removed it from vehicle upon exiting after drug dog alerted to vehicle); *State v. Smith*, 152 Idaho 115, 266 P.3d 1220 (Idaho App. 2011) (backpack in vehicle at time officer observed marijuana pipe in vehicle properly searched even though driver removed it from vehicle upon exiting).

[13,14] The question of competency to stand trial is one of fact to be determined by the court, and the means employed in resolving the question are discretionary with the court.[21] The trial court may cause such medical, psychiatric, or psychological examination of the accused to be made as it deems necessary.[22] But an explicit competency determination is necessary only when the court has reason to doubt the defendant's competence, and if proceedings do not provide the court with reason to doubt a defendant's competence, it does not err by not conducting a competency hearing.[23]

[15,16] A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.[24] We have recognized there are no fixed or immutable signs of incompetence, and a defendant can meet the modest aim of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies.[25]

We find no abuse of discretion in the trial court's decision to overrule Lang's motions for a competency evaluation. On appeal, Lang does not contend she was unable to understand or comprehend the proceedings against her. She argues only that "[h]er mental illness before jury selection and presentation of evidence prevented [her] from presenting a rational defense."[26] She does not explain why this is so, and we see nothing in the record to support this argument.

Despite Lang's mental health diagnoses and her occasional emotional responses in the courtroom, the record contains

---

[21] *State v. Lassek*, 272 Neb. 523, 723 N.W.2d 320 (2006).

[22] See, *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016); *Cortez, supra* note 4. See, also, Neb. Rev. Stat. § 29-1823 (Cum. Supp. 2018).

[23] See *State v. Hessler*, 274 Neb. 478, 741 N.W.2d 406 (2007).

[24] *Grant, supra* note 22.

[25] *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011).

[26] Brief for appellant at 15.

nothing that would provide the court with a reason to doubt her competence.

The trial court had the opportunity to observe and interact with Lang during jury selection, during the plea hearing, during the bench trial, and during sentencing. During those interactions, Lang consistently demonstrated an understanding of the criminal proceedings and her rights in relation to those proceedings, as well as the ability to assist in her own defense. On this record, there was no abuse of discretion in overruling Lang's motions for a competency evaluation.

### 3. Ineffective Assistance of Counsel

[17] Lang assigns that her trial counsel, who was different from her appellate counsel, provided ineffective assistance. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[27] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[28]

[18] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[29]

[19] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal.[30] The determining factor is whether the record is sufficient to adequately review the

---

[27] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[28] *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019).

[29] *Id.*

[30] *Id*.

question.[31] We have said the record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[32]

Lang's brief argues that her trial counsel was deficient in three respects: (a) failing to preserve appellate review of the court's rulings on the competency motions, (b) failing to move for a continuance, and (c) stipulating that evidence received at the suppression hearing could be considered by the court during the bench trial. We conclude the record is sufficient to resolve all of Lang's claims, and we find them all to be meritless.

## (a) Preserving Appellate Review

Lang argues that to preserve appellate review of the court's rulings on her motions for a competency evaluation, trial counsel should have taken an immediate interlocutory appeal from the court's rulings. Lang is mistaken, as is perhaps best illustrated by the fact that we reviewed those rulings in this direct appeal.

[20] It is true that a proceeding to determine competency to stand trial is a special proceeding within the meaning of Neb. Rev. Stat. § 25-1902 (Reissue 2016) and that an order finding an accused incompetent to stand trial and ordering the accused confined until such time as he or she is competent is a final order from which an appeal may be taken.[33] But no such order was entered here, because competency proceedings were deemed unnecessary by the court. The trial court's decisions overruling Lang's motions for a competency evaluation were not final, appealable orders,[34] and Lang's trial counsel was

---

[31] *Id.*

[32] *Id.*

[33] See *State v. Jones*, 258 Neb. 695, 605 N.W.2d 434 (2000).

[34] See *id.*

not deficient in waiting until direct appeal of the judgment to assign error to those interlocutory rulings.

### (b) Failing to Move for Continuance

Lang argues her trial counsel performed deficiently when he moved for competency evaluations prior to jury selection and prior to trial, rather than moving to continue trial. She argues that as between the two motions, "the correct motion was to continue the trial, as it would be easier to prove."[35] To prevail on such a claim, Lang would need to show both that counsel's decision to move for a competency evaluation rather than a continuance fell below an objective standard of reasonableness and that if a motion to continue had been made, a reasonable probability exists that the result of the trial would have been different.[36] She can show neither.

[21] Trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel.[37] As such, counsel does not render deficient performance merely by failing to present the motion that is "easier to prove." Moreover, Lang does not argue, and we see nothing in the record, suggesting that if a motion to continue had been made and sustained, the result of trial in this case would have been any different. This claim has no merit.

### (c) Stipulating to Evidence

Lang argues her trial counsel was ineffective for stipulating, during the bench trial, that the court could consider evidence received at the suppression hearing. The record affirmatively refutes her claim that trial counsel performed deficiently in this regard.

---

[35] Brief for appellant at 16.

[36] See *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

[37] *State v. Manijikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

At the plea hearing, Lang told the court that in order to preserve her right to appeal the suppression ruling, she wanted to waive a jury and have a stipulated bench trial. At the time, Lang's counsel explained that Lang was asking to "try this matter based upon the facts as submitted to the Court in the hearing on the motion to suppress." The court accepted Lang's jury waiver and proceeded directly to the stipulated bench trial. As is typical in such a proceeding, trial counsel stipulated to the admission of certain evidence while preserving the arguments raised in the motion to suppress, then the district court determined whether that evidence was sufficient to convict Lang of the crime charged.[38]

The record shows that Lang agreed to a stipulated bench trial to preserve her right to appeal the suppression ruling and that she did so after discussing this strategy with trial counsel and with the understanding that counsel would stipulate to the admission of the evidence received during the suppression hearing. On these facts, Lang cannot show trial counsel performed deficiently in stipulating to that evidence during the bench trial.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

[38] See, e.g., *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016); *Howard, supra* note 10.