IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. GREENWOOD


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

RICELLE R. GREENWOOD, APPELLANT.


Filed May 25, 2021.    No. A-20-694.


Appeal from the District Court for Jefferson County: VICKY L. JOHNSON, Judge. Affirmed.

Ronald R. Brackle for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.


PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Following a stipulated bench trial, Ricelle R. Greenwood was convicted of possession of a controlled substance (methamphetamine) and possession of drug paraphernalia. Greenwood now appeals the order of the district court for Jefferson County which overruled her motion to suppress. Based upon the reasons that follow, we affirm.

## BACKGROUND

On November 4, 2019, the State filed an information in the district court charging Greenwood with possession of a controlled substance (methamphetamine), a Class IV felony, and possession of drug paraphernalia, an infraction. Both charges related to a traffic stop which occurred on August 20, 2019. Greenwood filed a pretrial motion to suppress evidence on November 5, 2019.

*Motion to Suppress.*

At the hearing on Greenwood's motion to suppress, the State presented the testimony of Deputy Cody Barry of the Jefferson County Sheriff's Department (the Department). Barry testified that he had been employed by the Department for 6 years and had worked for 5 additional years in other law enforcement positions. He testified that he was a narcotics detector dog handler and that he worked with Jefferson County's certified drug dog in that capacity. Barry estimated that he had investigated at least 50 cases while working with the drug dog, in addition to other traffic stops conducted during the course of his career.

Barry testified that on the evening of August 20, 2019, he was on duty, driving his police vehicle and accompanied by his drug dog. At approximately 7:45 p.m., Barry observed a red pickup truck traveling without a rear license plate. Barry then switched on his police vehicle's emergency lights and initiated a traffic stop, and the pickup truck ultimately stopped after continuing on the road for at least two blocks. Barry testified that he approached the pickup truck, and that as he did so, he observed three occupants: a male driver, a female passenger, and a male passenger. Barry testified that his police vehicle was equipped with a "dash cam" which was recording during the traffic stop. The State offered a disc containing the footage from Barry's dash cam into evidence, which was received without objection.

Barry made contact with the pickup truck's driver and determined that he did not have a driver's license or proof of ownership of the truck. Barry asked the driver and the two passengers for identification, although he testified that all three occupants were previously known to him on account of prior police contacts. Barry testified that he identified Greenwood as the female passenger who was sitting in the center seat. At that time, Barry observed the interior of the pickup's cab, and he noticed that Greenwood had a "large backpack" with her.

Based upon his contact with the driver, Barry intended to issue a citation and conduct further investigation. He instructed all three of the truck's occupants to stay where they were and then returned to his police vehicle. Barry testified that he then contacted dispatch and asked for a "records check" on the occupants, including Greenwood. He testified that there were no outstanding warrants on either the driver or the two passengers, but that he knew from personal knowledge that all three had prior convictions related to controlled substances. Specifically, Barry testified that he was aware Greenwood had a prior history of methamphetamine use.

While he was sitting in his vehicle, Barry observed the occupants of the pickup truck, which was parked in front of him. Barry testified that Greenwood "was moving around a lot and just would not sit still in the seat." At one point, Greenwood and the male passenger exited the truck, and Barry testified that "[Greenwood] was attempting what appeared to leave the scene [sic]." Barry exited his own vehicle to prevent Greenwood from leaving. He testified that Greenwood told him "[s]he was wanting to go to the smoke shop to get cigarettes before they closed." Barry told Greenwood that she was not free to leave the scene at that time because he was still conducting the traffic stop. Barry testified that he instructed Greenwood to take off her backpack and her "waist pack" and set them on the ground behind the pickup truck. Barry then told Greenwood to sit on the curb while he went back to his police vehicle to finish writing a citation for the driver. At some point, Deputy Todd Lytle arrived at the scene as backup.

Barry testified that after he had finished writing the citation, he intended to deploy his narcotics detector dog to conduct a sniff search of the pickup truck based on a reasonable suspicion that the three occupants were involved in criminal activity. He testified that his reasons for deploying the drug dog included Greenwood's "adamant" behavior with respect to leaving the scene to buy cigarettes before the smoke shop closed, even though "there were other convenience stores open that she could have easily went to and purchased cigarettes." Barry also found it odd that Greenwood wanted to take her backpack with her to put the cigarettes in, since the backpack was "quite full" and he "didn't feel that you could fit any more in there." Barry additionally stated that he was concerned about Greenwood's conduct while she was seated inside the pickup truck, because "[t]here was a possibility she was trying to conceal something or take something out and put it somewhere else." He testified that his reasoning also included his knowledge that all three of the truck's occupants had prior convictions involving controlled substances. Based upon these factors, Barry believed that he had reasonable articulable suspicion to deploy his drug dog.

Barry issued a citation to the driver and asked for the driver's consent to search the pickup truck. When consent was denied, he asked the driver to exit the vehicle for safety reasons while he deployed the drug dog. At that time, Greenwood and the male passenger were already sitting on the curb. Barry testified that as the driver got out of the truck, a "blue object" which appeared to be a "drug paraphernalia pipe" fell on the ground. The driver then said to Barry: "Oh, shit, you found my pot pipe." Barry testified that he then detected the odor of burnt marijuana coming from the interior of the truck.

Barry testified that after he found the "pot pipe" and smelled burnt marijuana, he changed his position on deploying the drug dog, as he now believed that he had probable cause to search the vehicle pursuant to the automobile exception to the warrant requirement. He testified that the probable cause included containers which were inside the pickup truck, i.e., Greenwood's backpack and "fanny pack" which had been placed on the ground outside the vehicle. When asked, Greenwood denied consent to search her bags.

Barry testified that he instructed Lytle to search Greenwood's bags while he searched the pickup truck. He testified that inside Greenwood's belongings were a "black bag with a methamphetamine pipe, five small baggies and a straw." Barry testified that as the officer in charge of the case, he sent the five small baggies to the State laboratory for analysis. The contents of the baggies tested positive for methamphetamine.

On cross-examination, Barry explained that he decided not to deploy his drug dog after the pipe fell out of the truck because he had already established probable cause to search the vehicle. Barry admitted that when Greenwood exited the pickup truck, he told her that she was not free to leave, even though there were no outstanding warrants for her arrest. He denied that Greenwood was under arrest at the time he instructed her to remove her bags and sit on the curb.

Barry testified that throughout the traffic stop, he was wearing a "body cam" which captured his interactions with Greenwood and the other occupants of the pickup truck. Greenwood's counsel offered a disc containing the body cam footage into evidence, and it was received without objection.

The State next presented the testimony of Lytle. Lytle testified that he had been a law enforcement officer for 4 years and had attended classes related to narcotics investigations. Lytle testified that he assisted in the investigation in a backup capacity. He testified that Barry requested

him to search a "fanny pack and a multi-colored backpack" which belonged to Greenwood. Lytle testified that he located a "glass methamphetamine pipe" inside the fanny pack. Inside Greenwood's fanny pack, Lytle also found a second "methamphetamine pipe, [a scoop], and the methamphetamine baggies with a -- they had a white, powdery substance inside there consistent with methamphetamine." Inside Greenwood's backpack, Lytle found a "zipper pouch" that contained a "stem" and "some razor blades, Q-tips, et cetera, et cetera." He explained that items such as razor blades and Q-tips can be used to facilitate the ingestion of methamphetamine.

On cross-examination, Lytle testified that he had been wearing a body cam during the traffic stop and search. He testified that when he first arrived at the scene, his body cam was turned off, but subsequently he turned it on after arriving to assist Barry. Greenwood's attorney offered a disc containing the body cam footage into evidence, and it was received without objection.

During cross-examination, Lytle testified that when he first arrived on the scene, Greenwood was still inside the pickup truck. He stated that Greenwood was "very antsy" and "irritable" throughout the encounter because she wanted to leave and purchase cigarettes. He stated that after he searched Greenwood's bags and found methamphetamine and drug paraphernalia, he placed Greenwood under arrest.

After Lytle's testimony, the State rested its presentation of evidence. Greenwood did not present any evidence.

The district court issued a written order overruling Greenwood's motion to suppress. The court found that at the time Barry decided to deploy his drug dog, he had "an articulable suspicion based on objective facts." The court further found that once the pipe fell out of the pickup truck, law enforcement had probable cause to search the vehicle, including containers which were or had recently been inside the passenger compartment. Finally, the district court found that Greenwood was detained, but not arrested, when Barry told her that she could not leave the scene and that such detention was reasonable.

*Bench Trial and Sentencing.*

On July 2, 2020, the district court held a stipulated bench trial so that Greenwood could renew her objections related to the motion to suppress and preserve the issue for appeal. Among other exhibits, the court received into evidence the transcript from the suppression hearing, to which Greenwood properly objected. The district court took the matter under advisement and subsequently issued a written order of conviction, finding Greenwood guilty on both counts of the information.

On September 3, 2020, Greenwood was sentenced to a period of 18 months' probation on the charge of possession of a controlled substance (methamphetamine) and a $100 fine on the charge of possession of drug paraphernalia.

Greenwood now timely appeals her convictions and sentences.

ASSIGNMENTS OF ERROR

Consolidated and restated, Greenwood assigns that the district court erred in overruling her motion to suppress evidence found inside her bags.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Andera*, 307 Neb. 686, 950 N.W.2d 102 (2020). Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Andera, supra.*

ANALYSIS

To begin with, we note that on appeal, Greenwood does not argue that the initial traffic stop was unlawful. Accordingly, we consider only whether there existed reasonable suspicion to extend the scope of the initial traffic stop and whether the warrantless search of Greenwood's bags was supported by probable cause.

*Reasonable Suspicion to Extend Stop.*

Greenwood first argues that Barry improperly detained her at the scene of the traffic stop after she exited the pickup truck. She argues that the fact she had only been a passenger in the pickup truck for a short period of time, the fact that she was no longer inside the vehicle, and the fact that there were no outstanding warrants in her name all required Barry to release her from the scene--unless there existed facts which could give rise to reasonable suspicion to support further investigation. Greenwood further argues that the factors Barry testified to at the suppression hearing did not support a finding of reasonable suspicion.

Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id.* Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *Id.*

Here, the evidence shows that Barry initially pulled over the pickup truck for failure to display a valid license plate, which is a violation of Nebraska law. Barry made contact with the driver and learned that the driver was not carrying a driver's license or proof of ownership of the vehicle. Barry then instructed the occupants, including Greenwood, to stay seated inside the truck while he conducted further investigation, including a "records check" of the occupants. At some point while Barry was speaking with dispatch and writing out a citation for the driver, Barry observed Greenwood exit the pickup truck and try to leave the scene. At this point, the traffic stop had not yet concluded, and Barry told Greenwood to place her two bags on the ground and to sit on the curb.

In its order on Greenwood's motion to suppress, the district court found that Greenwood was detained at this point, although it found that such detention was reasonable under the circumstances. We agree. This court has held that occupants of a vehicle, including passengers, may be detained while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation. *State v. Yang*, 28 Neb. App. 447, 945 N.W.2d 206 (2020). The record shows that at the time Barry instructed Greenwood to sit on the curb, he had not yet issued

a citation to the driver; therefore, the initial traffic stop was still ongoing. Neither the fact that Greenwood had only been a passenger in the truck for a short time nor the fact that she had no outstanding warrants is relevant.

We determine that to the extent Greenwood argues that Barry unlawfully prevented her from leaving the scene of the ongoing traffic stop, this argument fails. Additionally, and as we discuss below, we determine that there existed reasonable articulable suspicion that Greenwood was involved in criminal activity which justified detaining Greenwood in order to conduct additional investigation.

This court has held that to expand the scope of a traffic stop and continue to detain an occupant of a vehicle, an officer must have a reasonable, articulable suspicion that a person in the vehicle is involved in criminal activity beyond that which initially justified the interference. *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *Id.* Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances. *Id.* Reasonable suspicion exists on a case-by-case basis. *Id.* Factors that would be independently consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *Id.* An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. *Id.* The totality of the circumstances includes all of the officer's observations and considerations, as well as the suspicion drawn by a trained and experience police officer by inference and deduction. *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019).

In this case, Barry testified that he suspected Greenwood was involved in criminal activity based on several factors: the knowledge that Greenwood and the truck's other occupants had criminal histories involving controlled substances, Greenwood's erratic movement while seated inside the pickup truck, her "abnormal" and "adamant" insistence on leaving the scene to purchase cigarettes, and Greenwood's "nervous and excited" demeanor in general. Barry further testified that he had been a law enforcement officer for over 10 years and that he was a narcotics detector dog handler with specialized training. Based on these circumstances, including his training and experience, Barry believed there was a reasonable suspicion that Greenwood was involved in criminal activity which justified continued detention of Greenwood and deployment of the drug dog.

Greenwood argues that the factors Barry testified to do not amount to reasonable articulable suspicion. She claims that the mere fact she had a criminal history involving controlled substances is insufficient to form the sole basis for continued detention, and she argues that her allegedly "abnormal" behavior can be explained by either the temperature inside the truck or a "bad nicotine habit." Brief for appellant at 22-23. However, a determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). The inquiry is not whether some circumstances may be susceptible of innocent explanation, but whether, taken together, they suffice to form a particularized and objective basis for the officer to suspect a crime is occurring, or is about to occur. *Id.* Based on the totality of the circumstances, we determine that Barry had a reasonable suspicion sufficient to expand the scope of the traffic stop and detain Greenwood while he deployed his drug dog.

Having determined that reasonable suspicion existed to support continued detention, the next question is whether the detention was reasonable in the context of an investigatory stop. See *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006). We consider both the length of the continued detention and the investigative methods employed.

At the suppression hearing, Barry testified that his narcotics detector dog was inside his police vehicle and that there was no undue delay between the time he issued the citation to the driver and the time he initiated the canine search. At that point, Greenwood was seated on the curb and was not wearing restraints. The record shows no lack of diligence on Barry's part nor any unreasonable delay in the investigation. Accordingly, we determine that the length and method of detention were reasonable.

As a result, we conclude that there existed reasonable suspicion to believe that Greenwood was involved in criminal activity and that it was not unlawful for Barry to detain her at the scene of the traffic stop pending further investigation. This argument fails.

*Probable Cause to Search Greenwood's Bags.*

Greenwood next argues that because Barry ultimately chose not to deploy his drug dog, there existed no probable cause to search either the pickup truck or her bags. She cites to Nebraska precedent which holds that an officer's reasonable suspicion of illegal drug activity, coupled with a drug detection dog's positive indication of drugs inside a vehicle, provides probable cause to search the vehicle. See *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Based on this, Greenwood reasons that "if there are no factors supporting an officer's suspicion of drug activity, and a well-trained drug detection dog is in the possession of the Officer, but not deployed," then probable cause must not exist. Brief for appellant at 24-25.

However, as we discussed above, there were factors supporting Barry's suspicion of drug activity. Moreover, Greenwood's argument overlooks the fact that a positive indication from a drug detection dog is not the sole method by which probable cause to search a vehicle may be obtained.

Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020). Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Id.* Among the established exceptions to the warrant requirement is the automobile exception. *Id.*

This exception applies when a vehicle is readily mobile and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle. *Id.* Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found. *Id.* Assuming the vehicle is readily mobile, the odor of marijuana alone provides probable cause to search the vehicle under the automobile exception to the warrant requirement. *Id*.

Although Greenwood argues that a search of the pickup truck and her bags could not have been supported by probable cause unless the drug dog was deployed, this contention is inconsistent with established Nebraska law. At the suppression hearing, Barry testified that as the driver was exiting the pickup truck, a "pot pipe" fell to the ground and, simultaneously, Barry smelled the odor of burnt marijuana. Based on these two factors, Barry correctly determined that a canine sniff

search was unnecessary, because he had already established probable cause to conduct a search of the pickup truck pursuant to the automobile exception to the warrant requirement. This argument fails.

In addition to the above, Greenwood argues that even if the search of the pickup truck was proper under the automobile exception, the search of her bags was improper because by the time probable cause was established, the bags were already outside the vehicle. However, on this record, we are not persuaded that this fact makes a difference.

It has been held that if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *State v. Lang, supra* (citing *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999)). This includes all containers within the vehicle. *Id.*

In *State v. Lang, supra*, the Nebraska Supreme Court determined that a search of the defendant's purse was justified under the automobile exception even when the purse was no longer inside the vehicle at the moment it was searched. The court stated that "the location of the purse at the time it was searched does not change its character as a container that was inside the vehicle when officers developed probable cause to search the vehicle." *Id.* at 741, 942 N.W.2d at 400.

Here, Greenwood was a passenger in the pickup truck at the time it was stopped. The only reason her bags were not still inside the vehicle at the time officers established probable cause to search it was because Greenwood had failed to obey Barry's orders to remain seated inside the truck. At the time probable cause was developed, Greenwood was lawfully detained. On this record, the location of Greenwood's backpack and waist pack at the time they were searched does not change their character as containers that were inside a vehicle that officers had established probable cause to search. This argument fails.

## CONCLUSION

We conclude that the district court properly overruled Greenwood's motion to suppress. Accordingly, Greenwood's convictions and sentences are affirmed.

AFFIRMED.