Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/28/2023 01:04 AM CDT

**State of Nebraska, appellee, v.
James H. McTizic, Jr., appellant.**

___ N.W.2d ___

Filed March 21, 2023.    No. A-22-422.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.
3. **Sentences.** Both Neb. Rev. Stat. §§ 29-2204 (Cum. Supp. 2022) and 29-2204.03 (Reissue 2016) give the trial court the discretion to order further evaluations of the defendant prior to sentencing when it deems such evaluations necessary for determining the sentence to be imposed.
4. **Sentences: Evidence.** A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed.
5. **Prisoners.** Neb. Rev. Stat. § 83-179 (Reissue 2014) provides that the Department of Correctional Services shall perform a comprehensive initial evaluation of each inmate entering its custody.
6. **Sentences: Appeal and Error.** The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense.
7. ____: ____. An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion.
8. ____: ____. In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed.
9. **Sentences.** Relevant factors in the sentencing court's analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or

record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

10. \_\_\_\_. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Douglas County: Horacio J. Wheelock, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Rebecca A. McClung, and Samantha Baldwin-Epstein for appellant.

Douglas J. Peterson, Attorney General, Siobhan E. Duffy, and Braden Dvorak, Senior Certified Law Student, for appellee.

Pirtle, Chief Judge, and Bishop and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Following his pleas of no contest, James H. McTizic, Jr., was convicted of one count of first degree sexual assault and three counts of attempted first degree sexual assault. He was sentenced to 40 to 50 years' imprisonment on his conviction for first degree sexual assault and to 19 to 20 years' imprisonment on each of his convictions for attempted first degree sexual assault. The sentences were to run concurrently with one another. On appeal, McTizic argues that the district court erred in failing to continue his sentencing so that he could undergo a 90-day assessment with the Nebraska Department of Correctional Services. McTizic also argues that ultimately, the district court imposed excessive sentences. For the reasons set forth below, we affirm.

## BACKGROUND

McTizic was originally charged in the present case with five counts: one count of first degree sexual assault of a child, a Class IB felony, and four counts of first degree

sexual assault, each a Class II felony. Subsequent to the filing of the original information, the State filed an amended information charging McTizic with one count of first degree sexual assault of a child, a Class IB felony; one count of first degree sexual assault, a Class II felony; and three counts of attempted first degree sexual assault. The State alleged that two of the attempted first degree sexual assault charges were Class III felonies and that the third such charge was a Class IIA felony. This distinction in classifications was because the circumstances underlying two of the charges occurred prior to an amendment of the statutory sentencing scheme in 2015.

On November 23, 2021, both the State and McTizic appeared before the district court and indicated they had reached a plea agreement. The State agreed to dismiss the charge of first degree sexual assault of a child, and McTizic agreed to plead no contest to the other four charges contained within the amended information. The plea agreement did not include any recommendation as to sentencing.

Upon the district court's inquiry, McTizic affirmed that he understood the nature of the charges, the possible penalties, and the constitutional rights he was waiving as a result of his no contest pleas. McTizic also indicated to the court his belief that he was of "sound mind" when deciding to enter into the plea agreement with the State. McTizic's trial counsel affirmed to the court her belief that McTizic was competent to enter into the plea agreement.

The State provided a factual basis for McTizic's no contest pleas. According to that factual basis, the charge of first degree sexual assault against McTizic arose from sexual contact which occurred between McTizic and his niece, L.C., when she was 5 to 9 years old. L.C. contacted law enforcement in April 2018, when she was 21 years old, to report that McTizic had sexually assaulted her when she was a child. L.C. described that from approximately June 1, 2002, through at least July 16, 2006, McTizic penetrated her vagina with his hand and penis on multiple occasions. She told law

enforcement that when these instances were occurring, she reported them to her mother and to her grandmother, but that they did not do anything to stop the abuse.

After L.C. reported the sexual abuse to law enforcement, her three sisters came forward and also reported sexual abuse at the hands of their uncle, McTizic. The first charge of attempted first degree sexual assault against McTizic arose from sexual contact which occurred between McTizic and T.W. during the time period from April 11, 1991, through May 20, 1995. At the time of her report to law enforcement, T.W. was approximately 33 years old. T.W. reported that McTizic digitally penetrated her vagina when she was between the ages of 5 and 8 years old. She also described instances when McTizic masturbated in front of her and her sisters and made overtly sexual comments in their presence.

The second charge of attempted first degree sexual assault against McTizic arose from sexual contact which occurred between McTizic and A.C. during the time period from August 19, 2016, through August 18, 2018. At the time of her report to law enforcement, A.C. was approximately 19 years old. A.C. reported that when she was 15 years old, McTizic rubbed her leg with his hand all the way up to her vagina. When she was 16 years old, she woke up on one occasion and realized that her pants had been pulled down and that McTizic had his mouth on her vagina.

The third and final charge of attempted first degree sexual assault against McTizic arose from sexual contact which occurred between McTizic and Q.M. during the time period from October 29, 1997, through October 28, 2003. At the time of her report to law enforcement, Q.M. was approximately 27 years old. Q.M. reported that when she was between the ages of 4 and 9 years old, she would wake up to McTizic's penis in her mouth. She also reported that McTizic had digitally penetrated her and had forced her, while she was awake, to put his penis in her mouth.

Ultimately, the district court found that McTizic understood the nature of the charges against him and the possible penalties; that his no contest pleas were made knowingly, intelligently, and voluntarily; and that the factual basis supported his pleas. The court then accepted McTizic's no contest pleas to one count of first degree sexual assault and to three counts of attempted first degree sexual assault. The court adjudged McTizic guilty of those charges and ordered that a presentence report be completed. Additionally, McTizic's trial counsel indicated her intent to have McTizic participate in a psychosexual evaluation prior to sentencing. A sentencing hearing was scheduled for February 4, 2022.

The presentence report revealed that McTizic is 59 years old. He did not graduate from high school, but did obtain his diploma through the GED program. McTizic has been unemployed almost his whole life. He informed the probation officer who conducted his presentence interview that he has supported himself mostly through engaging in illegal activities such as burglary. At the time of his current arrest, McTizic was living with his elderly and disabled parents. He has been divorced twice and has three adult daughters, but has a relationship with only one of those daughters.

McTizic has a lengthy criminal history dating back to when he was a juvenile. His convictions as an adult include burglary (seven times), attempted burglary, possession of burglar's tools, possession of a deadly weapon by a prohibited person, disturbing the peace, criminal mischief, indecent exposure, carrying a concealed weapon, forgery, assault and battery, possession of a controlled substance (crack cocaine), operating a motor vehicle during a period of suspension (six times), failure to appear (six times), shoplifting (two times), and obstructing the administration of law. As a result of these offenses, McTizic has been sentenced to a period of incarceration with the Department of Correctional Services seven times, many of these sentences for his burglary offenses. Essentially,

he has been in and out of prison on a regular basis since 1995. Most recently, he was released from prison in October 2020, after serving a 2-year sentence for attempted burglary and possession of burglar's tools. McTizic was sentenced to a period of 5 years' probation in 2017. Such probation was ultimately revoked because he committed a felony during the probationary period, failed drug tests, and failed to meet with his probation officer.

McTizic admitted to struggling with an addiction to crack cocaine, but expressed that he had not "used" the drug in approximately 2 years. However, he also told the probation officer that he currently desires to stop using controlled substances because such use has contributed to his criminal endeavors. In a prior presentence report, McTizic has also admitted to alcohol abuse.

McTizic has been diagnosed as suffering from bipolar disorder and other mental health issues. He also has some issues with his physical health.

General testing conducted by the probation office revealed that McTizic poses a very high risk for reoffense. Sex offender specific testing indicated that McTizic posed a high risk of reoffense. McTizic continues to deny that he has ever sexually assaulted anyone.

Prior to the sentencing hearing, McTizic did submit to a psychological evaluation with Dr. Kirk Newring, a licensed psychologist. The report from this evaluation was offered to the district court as an addendum to the presentence report. Such report indicates that in addition to issues with his physical health and his mental health, McTizic may be suffering from mild cognitive impairment. Newring noted that McTizic should have a more indepth neuropsychological evaluation in order to further assess his cognitive difficulties. Ultimately, he concluded as follows:

> McTizi[c] presents with some notable cognitive concerns . . . . Should . . . McTizi[c] be placed in [the Department of Correctional Services], it is recommended that [a]

more fulsome neuropsychological evaluation be completed with the consideration that . . . McTizi[c] may be showing indicators of a progressive dementia such [as] Alzheimer's or other neurocognitive disease . . . . [He] appears likely to have behavioral health as well as cognitive and physical health concerns during his incarceration. Despite his multiple prior incarcerations, his age and health conditions may make him vulnerable to pressures and potential mistreatment by peers. He may warrant placement in a geriatric focused housing unit if such is available. . . . McTizi[c] does not have a known history of sexual offense behavior while incarcerated. He denied any notable problems with misconduct reports while in prison. . . . McTizi[c] offered that he is prepared to "retire" at [the Department of Correctional Services] with the hopes that [the Department of Correctional Services] will be able to provide for his healthcare needs.

Based on the results of this evaluation, McTizic's trial counsel motioned the court to continue McTizic's sentencing so that the court could order him committed to the Department of Correctional Services for evaluation for a period not to exceed 90 days pursuant to Neb. Rev. Stat. §§ 29-2204 (Cum. Supp. 2022) and 29-2204.03 (Reissue 2016). In the motion, counsel indicated that such evaluation by the Department of Correctional Services "would provide more detailed information as a basis for determining the sentence to be imposed that [sic] has been provided by the presentence report."

The court addressed McTizic's motion to continue and motion for further evaluation at the start of the scheduled sentencing hearing on May 20, 2022. Initially, the district court noted that McTizic's sentencing had already been continued several times by McTizic in order for him to participate in the psychological evaluation. The court then allowed McTizic's counsel to argue in favor of the motions. Counsel indicated her belief that further evaluation of McTizic's

cognitive functioning was necessary prior to sentencing, not as "an attempt to get him out of a period of incarceration," but instead as a way to "ensure that he is not unduly affected medically by the incarceration because they didn't know what his needs were before he got there." Counsel further argued that the district court could use the additional information the 90-day evaluation would provide to assist it in understanding McTizic's motivation at the time of the offenses.

The State objected to the motions. It indicated that McTizic was familiar with the prison system, given his multiple incarcerations. It also did not believe further evaluation of McTizic's cognitive functioning was necessary:

> I think this is within the [c]ourt's discretion to order this type of eval[uation], but this is largely the same type of evaluation that the Department of . . . Correctional Services is going to do regardless. I don't see any reason to do it at this point when we have a psychological evaluation, we have a full [presentence report], [and] we have continued sentencing for approximately six months.

Ultimately, the district court denied McTizic's request for a continuance of sentencing so that he could undergo further evaluation. The court explained:

> I just for purposes of sentencing here today, I'm not of the opinion that I need more information. I have read everything. I read the evaluation from . . . Newring [and] I have read the [presentence report] a couple of times like I usually do, to be exact four times. So I have enough information to sentence.

The court did indicate that it would, as part of the sentencing order, direct that "the Diagnostic Evaluation Center at the Nebraska Department of Correction[al Services] keep [McTizic for evaluation] for 90 days to do a full evaluation to determine where he needs to go so that your valid concerns are met."

The court then turned to address McTizic's sentence. Defense counsel argued that given McTizic's physical, mental,

and cognitive health, the maximum allowable sentence was not appropriate. Instead, counsel asked that the court order that the sentences run concurrently with one another. To the contrary, the State argued in favor of a lengthy term of incarceration given McTizic's extensive criminal history, the serious nature of the current offenses, and the impact the offenses have had on his victims. The State argued that McTizic is "a serial sexual predator of young children."

The district court sentenced McTizic to 40 to 50 years' imprisonment on his conviction for first degree sexual assault. It sentenced him to 19 to 20 years' imprisonment on each of his three convictions for attempted first degree sexual assault. All four sentences were ordered to run concurrently with one another.

McTizic appeals here.

## ASSIGNMENTS OF ERROR

McTizic argues that the district court erred in failing to continue the sentencing hearing so that McTizic could be evaluated for a 90-day period by the Department of Correctional Services. McTizic contends that the information the court received from this evaluation would have been highly relevant to its imposition of appropriate sentences. McTizic also argues that the district court erred in imposing excessive sentences.

## STANDARD OF REVIEW

[1,2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

## ANALYSIS

*Denial of Motion to Continue Sentencing*
*for Further Evaluation.*

On appeal, McTizic first asserts that the district court erred "when it disregarded the motion for continuance regarding the implementation of an additional evaluation of McTizic." Brief for appellant at 15. McTizic argues that the results of a further neuropsychological evaluation would have provided the district court with necessary sentencing information in addition to addressing his placement needs within the correctional system. Upon our review, we find no error in the district court's denial of McTizic's request to undergo further evaluation prior to sentencing.

[3] McTizic relies on the language of §§ 29-2204 and 29-2204.03 to support his assertion that the district court should have granted his request for further evaluation. Section 29-2204(4) provides as follows:

When the [sentencing] court is of the opinion that imprisonment may be appropriate but desires more detailed information as a basis for determining the sentence to be imposed than has been provided by the presentence report . . . , the court may commit an offender to the Department of Correctional Services. During that time, the department shall conduct a complete study of the offender as provided in section 29-2204.03.

Section 29-2204.03 provides, in relevant part:

(1) When the court is of the opinion that imprisonment may be appropriate but desires more detailed information as a basis for determining the sentence to be imposed than has been provided by the presentence report . . . , the court shall commit an offender to the Department of Correctional Services for a period not exceeding ninety days. The department shall conduct a complete study of the offender during that time, inquiring into such matters as his or her previous delinquency or criminal experience, social background, capabilities,

and mental, emotional, and physical health and the reha-
bilitative resources or programs which may be available
to suit his or her needs.

(2) By the expiration of the period of commitment
or by the expiration of such additional time as the court
shall grant, not exceeding a further period of ninety days,
the offender shall be returned to the court for sentencing
and the court shall be provided with a written report of
the results of the study, including whatever recommenda-
tions the department believes will be helpful to a proper
resolution of the case. After receiving the report and the
recommendations, the court shall proceed to sentence
the offender . . . .

Both §§ 29-2204 and 29-2204.03 give the court the discretion
to order further evaluations of the defendant prior to sentencing
when it deems such evaluations necessary for determining the
sentence to be imposed.

[4] In this case, the district court was clearly of the opinion
that it did not need any further information than the presen-
tence report and the psychological evaluation had already
provided. The court stated, "I'm not of the opinion that I need
more information. I have read everything. I read the evalu-
ation from . . . Newring [and] I have read the [presentence
report] a couple of times like I usually do, to be exact four
times. So I have enough information to sentence." We note
that a sentencing court has broad discretion as to the source
and type of evidence and information which may be used
in determining the kind and extent of the punishment to be
imposed. See *State v. Thieszen*, 300 Neb. 112, 912 N.W.2d
696 (2018).

Given the comprehensive nature of both the presentence
report and the psychological evaluation, we cannot say that
the district court abused its broad discretion in failing to order
a further evaluation of McTizic prior to sentencing. The court
had been provided with a great deal of information about
McTizic's circumstances, including the possibility that he

was currently suffering from some cognitive decline and may require further evaluation on this issue. Such information, coupled with the serious nature of McTizic's offenses and his significant criminal history, provided the district court with ample information to determine an appropriate sentence. This is especially true given that neither McTizic nor his trial counsel ever specifically argued that his cognitive decline contributed to the behavior which gave rise to his current offenses. In fact, it is important to note that most of the behaviors surrounding McTizic's current offenses had occurred decades prior to his convictions. There is nothing to indicate that McTizic was suffering from any cognitive decline at that point in time.

[5] To the extent that McTizic requested the further evaluation to provide the Department of Correctional Services with relevant information about his placement within the prison system, we note that the district court did order a further evaluation to occur after sentencing, but prior to any placement decisions. At oral argument, the State took the position that the district court did not have the authority to order any specific type of postsentence evaluation. We do not need to resolve this issue here. Neb. Rev. Stat. § 83-179 (Reissue 2014) provides that the Department of Correctional Services shall perform a comprehensive initial evaluation of each inmate entering its custody. Section 83-179 states in part:

> Upon initial admission to a facility, each person committed to the department shall be given a physical examination and a thorough evaluation. The evaluation shall include such person's psychological, social, educational, and vocational condition and history and the motivation of the offense. A report containing the findings of the examination and evaluation shall be submitted on each such person to the chief executive officer of the facility. The report shall include recommendations regarding the facility to which such person should be assigned, the degree and kind of custodial control, and the

program of treatment for rehabilitation, including medical and psychological treatment and educational and vocational training.

McTizic does not provide a convincing argument regarding why the statutorily required postsentence evaluation would be insufficient to both protect his interests and inform the Department of Correctional Services of his condition, particularly where, as here, the district court has called attention to the need for a thorough neuropsychological examination. Moreover, we note that McTizic's current sentence of imprisonment is not the first time he has spent time in prison. Instead, this will be his eighth sentence of imprisonment. As such, it is clear that McTizic is knowledgeable about the prison system and that the Department of Correctional Services is familiar with McTizic's needs. If McTizic's needs have changed since his last time in prison a few years ago, the statutorily required postsentence evaluation should provide the Department of Correctional Services with an adequate opportunity to assess where McTizic should be placed within the prison system.

Ultimately, we cannot say, given the specific facts of this case, that the district court erred in failing to order a further evaluation of McTizic prior to rendering its sentencing decision. McTizic was thoroughly evaluated by the probation office and by an independent mental health professional prior to the date of the sentencing hearing. Given these evaluations, the district court did not believe that it needed any further information to determine appropriate sentences. Furthermore, the court ordered a postsentence evaluation of McTizic to occur prior to his placement within the prison system.

*Excessive Sentences.*

McTizic also asserts on appeal that the district court imposed excessive sentences. Specifically, he argues that in imposing an aggregate sentence of 40 to 50 years' imprisonment, the district court failed to consider such mitigating

factors as his predisposition to criminal conduct, his chronic health problems, his long-term struggle with substance abuse, and his role as a caregiver for his elderly parents prior to his arrest. McTizic believes that instead of considering these mitigating factors in imposing a sentence, the court focused solely on the serious nature of the charged offenses. Upon our review, we find no abuse of discretion in the district court's sentencing determination.

[6,7] The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016). McTizic was convicted of first degree sexual assault, a Class II felony. Class II felonies are punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). The district court sentenced McTizic to 40 to 50 years' imprisonment. Such sentence is clearly within the statutory limits. McTizic was also convicted of three counts of attempted first degree sexual assault. Two of these counts were charged as Class III felonies because they occurred prior to August 30, 2015, when 2015 Neb. Laws, L.B. 605, took effect. See Neb. Rev. Stat. §§ 28-201 and 28-319 (Reissue 2008). Prior to August 30, 2015, Class III felonies were punishable by 1 to 20 years' imprisonment. See § 28-105 (Reissue 2008). The court sentenced McTizic for these two convictions to 19 to 20 years' imprisonment, which was within the statutory limits. The third count of attempted first degree sexual assault was charged as a Class IIA felony because it occurred after August 30, 2015. See §§ 28-201 and 28-319 (Reissue 2016). A Class IIA felony is currently punishable by up to 20 years' imprisonment. See § 28-105 (Cum. Supp. 2022). The court sentenced McTizic for this conviction to 19 to 20 years' imprisonment, which was also within the statutory limits.

[8-10] Because the sentences are within the relevant statutory limits, we review the district court's sentences for an abuse of discretion. In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *State v. Starks, supra*. Relevant factors in that analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

We begin our analysis by observing that at the sentencing hearing, the district court very clearly indicated that it had carefully considered its sentencing decision:

In fashioning this sentence I have considered . . . McTizic's age, mentality, education, experience[,] social and cultural background, past criminal record, motivation for the offense, the nature of the offense and the violence involved in the commission of this offense.

The [c]ourt feels confident in my review of the presentence investigation report which I read four times, and in my review of . . . Newring's evaluation, which was read three times because I recently got it, that I have enough information to sentence . . . McTizic. I have information — thorough information regarding his previous criminal experience, his previous delinquency, I have sufficient information regarding his social background, his capabilities, his mental status, his emotional status, his physical health and I know through my experience of being on the bench now almost seven years,

the rehabilitative resources that are available at the Nebraska Department of Correctional Services.

Contrary to McTizic's assertions on appeal, there is no indication in the record that the district court failed to appropriately consider all of the relevant circumstances present in this case, including any mitigating circumstances. As we discussed above, both the presentence report and the report from McTizic's psychological evaluation provided indepth information regarding McTizic's past, his present living situation, and his ongoing physical, mental, and cognitive health issues. The district court indicated that it had carefully reviewed all of these materials. In addition, during the sentencing hearing, McTizic's counsel detailed to the court all of the mitigating circumstances present in the case.

We can find no abuse of discretion in how the district court balanced these mitigating factors with not only the serious nature of McTizic's current offenses, but also with his significant criminal history. As such, we can find no abuse of discretion in the district court's ultimate sentencing determination.

## CONCLUSION

Upon our review, we find no abuse of discretion in the district court's sentencing determination. As such, we affirm McTizic's convictions and sentences.

AFFIRMED.