IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. TORRES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEREMY TORRES, APPELLANT.

Filed June 25, 2024.    No. A-23-897.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz, Dahlquist & Klein, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Jeremy Torres appeals his plea-based convictions for attempted first degree murder, use of a deadly weapon to commit a felony, second degree assault on a law enforcement officer, and tampering with a witness. On appeal, he contends that the district court erred in accepting his pleas without first determining his competence; in failing to order a 90-day evaluation prior to making a sentencing determination; and in imposing an excessive aggregate sentence. He also alleges that he received ineffective assistance of trial counsel in various respects. Upon our review, we affirm Torres' convictions and sentences.

## II. BACKGROUND

In October 2022, the State filed an information charging Torres with six counts: attempted first degree murder, a Class II felony; first degree assault on a law enforcement officer, a Class II

- 1 -

felony; two counts of use of a deadly weapon to commit a felony, each a Class II felony; second degree assault on a law enforcement officer, a Class II felony; and tampering with a witness, a Class IV felony. Torres pled not guilty to the charges.

In November 2022, the State amended the information to add an allegation that Torres was a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Supp. 2023). In July 2023, the State filed a second amended information. This information did not include a charge of first degree assault on a law enforcement officer or a second charge of use of a deadly weapon to commit a felony, but the other charges remained the same.

Also in July 2023, the State and Torres entered into a written plea agreement. The plea agreement indicated that Torres would plead guilty or no contest to the charges contained in the second amended information. In exchange, not only would the State drop the charge of first degree assault on a law enforcement officer and the second charge of use of a deadly weapon to commit a felony, but would also agree to not file any additional charges in connection with the incident that resulted in the charges and to drop the pending charges in a separate case. The State did reserve the right to seek a habitual criminal enhancement. As a part of the written agreement, Torres indicated his understanding of the rights he was waiving with his pleas. He also affirmed that he had fully discussed the case and his possible defenses with trial counsel and that he was "mentally and legally competent to enter into this agreement."

A plea hearing was held on July 19, 2023. At this hearing, the parties provided the court with the written plea agreement. The district court clearly reiterated to Torres the nature of the charges against him and the possible penalties for those charges. Pursuant to the court's questioning of Torres, he affirmed that no one had promised him anything other than the written terms of the plea agreement or threatened him in order to compel his plea. Torres indicated his decision to plead no contest to each of the charges contained in the second amended information.

The State provided a factual basis for Torres' plea. During the evening hours of September 19, 2022, Officer Robert Gleim was dispatched to the area of West P Street and Huntley Avenue in Lyman, Scotts Bluff County, Nebraska, upon reports of shots fired in the area. When Gleim arrived in his patrol car, Torres approached him before Gleim could even get out of his vehicle. Pursuant to his conversation with Torres, Gleim followed Torres and Torres' mother toward the area where the gunshots were thought to have originated from. Gleim had his body-worn camera activated and recording. As the three walked together, Torres and his mother began speaking to each other in Spanish. Later translations of this conversation revealed that Torres repeatedly told his mother to go inside the house because "I'm going to kill him." Torres' mother eventually tells Torres to "shut [his] mouth."

Gleim, apparently unaware of what was being said by Torres, continues investigating whether shots had been fired in the area. He speaks to multiple witnesses who all deny hearing any gunshots. One such witness suggests that the noise could have been from a car backfiring.

As Gleim returns to his patrol car with the intent of looking into who the shots fired call originated from, Torres approaches him and asks if they are "cool." Gleim tells Torres that he is "just trying to make sure nobody has gotten shot up here." Torres then repeats, "are we cool?" When Gleim responds that they are cool, Torres takes out a knife and begins stabbing Gleim in the neck behind his left ear and near his spine. Gleim attempts to retreat, as Torres runs toward him

- 2 -

saying, "I'm going to kill you, bitch." Ultimately, Gleim is able to reach his taser and tase Torres, who is still holding the knife. Torres is then handcuffed and taken to the hospital.

While at the hospital, Torres makes unsolicited statements about his belief that Gleim was having an affair with his child's mother, Alyssa Hill. Such belief was based on Gleim saying hello to Alyssa when they ran into each other at various locations in Lyman. It is later determined that Alyssa is the person who called 911 to report that gunshots had been fired.

A few days after this incident, while Torres is being held in jail, he telephones Alyssa and tells her that she needs to recant the story she told police. Essentially, he asks her to lie to keep him out of trouble.

The district court found that Torres understood the nature of the charges against him and the possible sentences; that his no contest pleas were made freely, voluntarily, knowingly, and intelligently; and that the factual basis supported his pleas. The court then accepted Torres' no contest pleas and adjudged him guilty of attempted first degree murder, use of a deadly weapon to commit a felony, second degree assault on a law enforcement officer, and tampering with a witness. The court ordered that a presentence investigation report (PSR) be completed prior to sentencing. However, the court denied Torres' request for a 90-day evaluation to ascertain his mental health issues. The court explained, "I'm just simply not going to order one because I don't think I need any additional help. If I get the [PSR] and I think I need further information, at that point then I will consider ordering one."

Sentencing was held on October 12, 2023. At the hearing, the State offered evidence to demonstrate that Torres was a habitual criminal. The court accepted such evidence and found that Torres was, in fact, a habitual criminal as he had been twice convicted of a crime, sentenced, and committed to prison for terms of not less than 1 year. The State argued in favor of Torres being sentenced to a significant period of incarceration, given the heinous nature of his crime and his serious criminal history. To the contrary, Torres' defense counsel highlighted Torres' struggles with his mental health and argued that Torres did not even realize that Gleim was a law enforcement officer at the time of the stabbing. Counsel asked the court to sentence Torres toward the bottom-end of the statutory limits so that Torres could get out of prison and continue to seek mental health treatment.

Torres made the following comments during the sentencing hearing:

I just like to apologize, again, for the officer. I wasn't in my right state-of-mind. If I would have been on medication this wouldn't have never happen. I'm asking for help in seeking treatment. And, you know, I know I can be productive and I want to be -- I want to have that opportunity to be there for my daughter. I just ask you to have mercy on me, too.

The district court noted that it had read and reviewed the PSR and the video of the encounter between Gleim and Torres. The court discussed Torres' criminal history, the serious and violent nature of his current offense, and his mental health problems. The court indicated it was somewhat constrained in its sentencing determination by its prior finding that Torres was a habitual criminal. Ultimately, the district court sentenced Torres to 25 to 30 years' imprisonment on his conviction for attempted first degree murder; to 10 to 20 years' imprisonment on his conviction for use of a deadly weapon to commit a felony; to 10 to 20 years' imprisonment on his conviction for second degree assault on a law enforcement officer; and to 10 to 10 years' imprisonment on

his conviction for tampering with a witness. The sentences for attempted first degree murder, second degree assault on an officer, and tampering with a witness were ordered to be served concurrently with each other, but consecutively with the use of a deadly weapon to commit a felony conviction. As such, Torres was sentenced to an aggregate sentence of 35 to 50 years' imprisonment.

Torres appeals his convictions and sentences here.

## III. ASSIGNMENTS OF ERROR

In his brief on appeal, Torres assigns three errors by the district court. First, he asserts that the court erred in accepting his no contest pleas without first determining whether he was competent to enter such pleas. Second, he challenges the district court's decision to deny his request for a 90-day evaluation prior to sentencing. Third, he argues that the court erred in imposing an excessive sentence. Torres also asserts that he received ineffective assistance of trial counsel when counsel failed to present a defense of not guilty by reason of insanity; promised him a more lenient sentence than what he actually received; and failed to acquire certain evidence prior to the sentencing hearing.

## IV. STANDARD OF REVIEW

A trial court's determination of competency will not be disturbed on appeal unless there is insufficient evidence to support the finding. A trial court's decision not to order a competency evaluation or hold a competency hearing is reviewed for an abuse of discretion. *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. Competency to Enter No Contest Pleas

In his brief on appeal, Torres argues that the district court erred in accepting his no contest pleas without assessing his competency to enter such pleas. Because neither Torres nor his defense counsel raised the issue of competency before the district court and because there was nothing to alert the court to a competency question, we find no abuse of discretion in the district court's acceptance of Torres' no contest pleas.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019). The competency standard includes both (1) whether the defendant has a rational as well as factual understanding of the proceedings against him or her and (2) whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding. *Id*. The Nebraska Supreme Court has recognized there are no fixed or immutable signs of incompetence, and a defendant can meet the modest aim of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies. *State v. Lang, supra*. An explicit competency determination is necessary only when the court has reason to doubt the defendant's competence, and if proceedings do not provide the court with reason to doubt a defendant's competence, it does not err by not conducting a competency hearing. *Id*.

Here, the record contains nothing that would have provided the district court with a reason to doubt Torres' competence to enter his no contest pleas. First, neither Torres nor his defense counsel ever raised the question of Torres' competence to the district court. While defense counsel did ask the court to consider ordering a 90-day evaluation of Torres prior to sentencing to assess Torres' mental health as a mitigating sentencing factor, counsel never provided any indication of a concern that Torres' mental health affected his ability to enter valid no contest pleas.

In addition, portions of the record affirmatively refute any question of Torres' competence to enter the pleas. During the plea hearing, Torres provided appropriate responses to the district court's questions and appeared to understand the purpose of the hearing. When given an opportunity to ask questions, he affirmed that he understood the proceedings. In fact, in his written plea agreement, Torres affirmatively indicated that he was mentally and legally competent to enter a plea. Moreover, during his presentence interview, Torres asserted that while in jail awaiting trial, he had received mental health treatment and medication which had improved the status of his mental health since the incident.

The district court had the opportunity to observe and interact with Torres during the plea hearing and at prior hearings. During those interactions, Torres consistently demonstrated an understanding of the criminal proceedings and his rights in relation to those proceedings, as well as the ability to assist in his own defense. On this record, there was no abuse of discretion in the court's failure to accept Torres' no contest pleas without first, sua sponte, inquiring about his competence.

### 2. 90-DAY EVALUATION

On appeal, Torres also challenges the district court's decision to deny his request for a 90-day evaluation prior to sentencing. In his brief to this court, Torres explains that his request was based on the language of Neb. Rev. Stat. § 29-2204.03 (Reissue 2016), which states, in relevant part:

> When the court is of the opinion that imprisonment may be appropriate but desires more detailed information as a basis for determining the sentence to be imposed than has been provided by the [PSR] required by section 29-2261, the court shall commit an offender to the Department of Correctional Services for a period not exceeding ninety days. The department shall conduct a complete study of the offender during that time, inquiring into

such matters as his or her previous delinquency or criminal experience, social background, capabilities, and mental, emotional, and physical health and the rehabilitative resources or programs which may be available to suit his or her needs.

This court has interpreted this statutory section to provide sentencing courts with the discretion to order further evaluations of the defendant prior to sentencing when it deems such evaluations necessary for determining the sentence to be imposed. See e.g. *State v. McTizic*, 31 Neb. App. 675, 988 N.W.2d 197 (2023). However, such statute does not provide that a defendant can or should request the evaluations. See *State v. St. Cyr*, 26 Neb. App. 61, 916 N.W.2d 753 (2018), *disapproved on other grounds, State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020).

Here, we find no abuse of discretion by the district court in failing to order further evaluation of Torres beyond that completed as part of the PSR. When the district court denied Torres' request for the 90-day evaluation, it indicated that it did not think it would need additional information beyond the PSR. However, the court also indicated that if it felt differently after reviewing the PSR, it would consider ordering additional evaluations. The PSR received by the district court contained considerable information about Torres' mental health status both at the time of the offense and at the time of the sentencing hearing. In addition, during defense counsel's statements at the sentencing hearing, counsel reiterated all of the information relevant to Torres' mental health. Counsel did not, however, explain to the district court or to this court on appeal exactly what further information would be gleaned from further evaluations of Torres or how that information may change the district court's sentencing determination.

Given the comprehensive nature of the PSR, we cannot say that the district court abused its broad discretion in failing to order a further evaluation of Torres prior to sentencing. The court had been provided with a great deal of information about Torres' circumstances, including the fact that he suffered from mental health issues and was seeking treatment for those issues. Such information, coupled with the serious nature of Torres' offense and his significant criminal history, provided the district court with ample information to determine an appropriate sentence. This is especially true given that neither Torres nor his defense counsel ever specifically asserted exactly what additional information could be learned from further evaluation.

### 3. Excessive Sentence

Torres asserts that the district court imposed excessive sentences because the court failed to consider the severity of Torres' mental health struggles at the time of his offense: "Torres' case involved conduct that was consistent with psychosis. It was disclosed that he suffered from multiple mental health diagnoses to include paranoia, post-traumatic stress disorder and schizophrenia." Brief for appellant at 18. Torres asserts that such mental health struggles should have mitigated the length of his prison sentence.

The first step in analyzing whether sentences are excessive is to examine the statutory limits for each offense. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016). As charged by the State, Torres was convicted of three Class II felonies and one Class IV felony. Normally, Class II felonies are punishable by 1 to 50 years' imprisonment and Class IV felonies are punishable by up to 2

years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). However, in this case, Torres was found to be a habitual criminal. As a result, pursuant to § 29-2221(1), each of Torres' felony convictions was subject to a mandatory minimum term of 10 years' imprisonment and a maximum term of 60 years' imprisonment. Given the sentencing scheme of the habitual criminal statute, Torres' sentences are clearly within statutory limits.

Because Torres' sentences are within statutory limits, we review the district court's sentences for an abuse of discretion. In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *State v. Starks, supra*. Relevant factors in that analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

The PSR ordered by the district court indicates that at the time of sentencing, Torres was 37 years old. While he was not married, he did share a young daughter with his ex-girlfriend. The PSR also indicates that Torres has struggled with his mental health for some time. He self-reported diagnoses of bi-polar disorder, paranoia, and schizophrenia. In the months leading up to his assault of Gleim, Torres had sought out counseling for his mental health problems. He continued such counseling while he was in jail awaiting trial. In addition, since being in jail, he has begun taking medication for his mental illness. According to Torres, he was not taking any such medication at the time of his offense, which he believes contributed to his actions against Gleim.

Torres has a rather significant criminal history, in that he has spent a large portion of his adult life incarcerated. In 2003, when he was 17 years old, Torres was convicted in Arizona of attempt to commit sexual conduct with a minor, for which he was sentenced to 7 years in prison and sexual conduct with a minor, for which he was sentenced to 6 months in prison. Two years later, when he was almost 19 years old, he was convicted in Arizona of armed robbery with a deadly weapon, for which he was sentenced to 14 years' imprisonment. During his time in prison, he obtained 47 disciplinary infractions. Those infractions were the result of behaviors which included possessing or manufacturing an intoxicating substance; theft or possession of stolen property; conspiracy to commit both a Class A and a Class B felony; disorderly conduct; and rioting. Upon his release from prison, he was found guilty of interfering with a monitoring device in 2018 and of driving under the influence in 2022. In addition to his criminal history, testing conducted by the probation office revealed that Torres posed a very high risk of re-offense in the future.

Despite Torres' assertions to the contrary on appeal, the record demonstrates that the district court sufficiently considered all of the relevant sentencing factors in making its sentencing determination. The district court indicated that it had reviewed the PSR prior to sentencing. The PSR included pertinent information about Torres' mental health in the past, at the time of the offense, and at the time of the sentencing hearing. The court acknowledged this information, but noted its serious concern about the violent and heinous nature of Torres' current offense and about

the severity of his criminal history. Upon our review, we also note that Torres received a significant benefit from his plea agreement. In addition to the State dismissing two additional Class II felonies, it also agreed not to file any other charges associated with the stabbing of Gleim and agreed to dismiss charges filed against Torres in a separate case. Considering all of the relevant sentencing factors and the applicable law, we conclude that the sentences imposed by the district court were not excessive and that the court did not abuse its discretion when it sentenced Torres within the statutory limits.

### 4. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Torres next assigns in his brief on appeal, through new counsel, that his trial counsel was ineffective. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). Otherwise the issue will be procedurally barred. *Id*. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, except for the defenses of insufficiency of the indictment, information, or complaint; ineffective assistance of counsel; and lack of jurisdiction. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id*.

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as part of any plausible trial strategy. *Id*.

In general, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense. *State v. Lowman, supra*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha, supra*. When the claim is raised in a direct appeal the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

The entire analysis of a claim of ineffective assistance of counsel should be viewed with a strong presumption that counsel's actions were reasonable, and trial counsel is afforded due deference to formulate trial strategy and tactics. *Id*. An appellate court will not second-guess trial counsel's reasonable strategic tactics when reviewing claims of ineffective assistance of counsel. *State v. Lowman, supra*.

### (a) Insanity Defense

Torres first claims that his trial counsel was ineffective because she did not "present a defense of not guilty by reason of insanity." Brief for appellant at 22. The defense of insanity has two elements: (1) that the defendant had a mental disease at the time of the acts charged; and (2) that this mental disease impaired his ability to such an extent that either (i) he did not understand the nature and consequences of what he was doing; or (ii) he did not know the difference between right and wrong with respect to what he was doing. *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023). Additionally, Neb. Rev. Stat. § 29-2203(1) (Reissue 2016) provides that:

> Any person prosecuted for an offense may plead that he or she is not responsible by reason of insanity at the time of the offense and in such case the burden shall be upon the defendant to prove the defense of not responsible by reason of insanity by a preponderance of the evidence. No evidence offered by the defendant for the purpose of establishing his or her insanity shall be admitted in the trial of the case unless notice of intention to rely upon the insanity defense is given to the county attorney and filed with the court not later than sixty days before trial.

We determine the record is insufficient to adequately review this claim. There is no information within the record pertaining directly to Torres' mental state at the time of the acts charged and whether he understood the nature and consequences of what he was doing or the difference between right and wrong with respect to what he was doing. Further, there is nothing in the record about Torres' trial counsel discussing, or not discussing, the insanity defense with him. Therefore, we conclude that the record is insufficient to address this assignment on direct appeal.

### (b) Promise of Lighter Sentence

Next, Torres claims that his trial counsel provided ineffective assistance when she "led him to believe that he would receive a much lighter sentence" if he pled to the amended charges. Brief for appellant at 23. This allegation of ineffectiveness of counsel has no merit. During the colloquy at the plea hearing, Torres denied that any threats or promises were made to induce him to enter his pleas of no contest. In addition, in the written plea agreement, Torres affirmed that his attorney made him aware of the sentencing options available if he went to trial on the original charges and the sentencing options available if he pled to the amended charges. The district court thoroughly explained to Torres the possible sentences he faced pursuant to his no contest pleas. Accordingly, the record affirmatively refutes Torres' claim that he was promised lenient sentencing. See *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

### (c) Failure to Depose Witnesses and Obtain Video

Finally, Torres claims that his trial counsel provided ineffective assistance when she "failed to depose the officers and acquire all the video." Brief for appellant at 25. Specifically, Torres asserts that had counsel deposed all of the law enforcement officers involved in the incident and viewed all of the available body-worn camera footage from these officers, that three significant mitigating factors would have been brought to the district court's attention and, ultimately, would have affected his sentence. We address each mitigating factor raised by Torres separately.

First, Torres alleges that had trial counsel deposed all the officers and acquired all the video, she would have learned that it was possible that Torres did not realize that Gleim was a law enforcement officer prior to stabbing him. Contrary to Torres' arguments, trial counsel made this specific argument during the sentencing hearing. Such argument was rejected by the district court, who, after viewing footage from Gleim's body worn camera found that Torres "either knew or definitely should have known this was a law enforcement officer." Torres cannot show that trial counsel provided deficient performance in failing to raise this "mitigating factor" to the district court.

Torres also asserts that had trial counsel deposed all of the officers and acquired all the video, she would have learned that "after being placed in the cruiser for transportation an unexpected stop occurred that involved a police officer striking him with a pistol hard enough to create a large gash in his head." Brief for appellant at 25. Torres does not explain exactly how such information would have mitigated his sentence in any way. Even if true, these facts do not change the serious and violent nature of Torres' offense. In addition, because such facts allegedly occurred after his arrest, they do not provide any explanation or rationale for Torres' actions. Torres cannot show he was prejudiced by any deficient performance of his counsel, because the information she allegedly did not uncover would not have provided any mitigating factors to the district court's sentencing determination.

Torres asserts that had trial counsel deposed all of the officers and acquired all the video, she would have also learned that "shotgun shells were placed in his pockets [by law enforcement officers]." Brief for appellant at 25. Again, Torres does not explain exactly how such information would have mitigated his sentence in any way. Even if true, these facts do not change the serious and violent nature of Torres' offense. In addition, because such facts allegedly occurred after his arrest, they do not provide any explanation or rationale for Torres' actions. The facts also are not relevant to any charges Torres faced in the lower court proceedings. He was charged with stabbing Gleim, not with any gun charges. Torres simply cannot show that he was prejudiced by any deficient performance of his trial counsel in this regard.

## VI. CONCLUSION

For the reasons stated herein, we affirm Torres' convictions and sentences. We also find no merit to Torres' claims of ineffective assistance of trial counsel with the exception of his claim regarding counsel's failure to raise the insanity defense. We find our record insufficient to address that allegation.

AFFIRMED.