IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. KLIPFEL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHRISTOPHER L. KLIPFEL, APPELLANT.

Filed December 26, 2024.    No. A-23-776.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a stipulated bench trial, Christopher L. Klipfel was convicted in the Lancaster County District Court of three felony drug crimes and was sentenced to an aggregate term of 10 to 14 years' imprisonment. On appeal, Klipfel challenges the district court's decisions overruling his motion to suppress and denying him the ability to offer additional evidence regarding the motion at trial, overruling his trial counsel's motion to withdraw, and overruling his motion for new trial. Klipfel also claims the district court erred by failing to advise him of the effect of entering into a stipulated trial, finding there was sufficient evidence to convict him, and failing to find that his trial counsel was ineffective for various reasons. We affirm.

## II. BACKGROUND

On April 21, 2022, a law enforcement officer initiated a traffic stop of Klipfel's vehicle after observing several traffic violations. During the stop, another law enforcement officer detected

- 1 -

the odor of marijuana coming from the vehicle. The vehicle and the trailer it was pulling were searched. During the search, the officers found 481 pounds of marijuana, more than 4,000 Tetrahydrocannabinol (THC) vape cartridges, and $1,473 in cash.

On August 24, 2022, the State filed an information charging Klipfel with three counts: counts 1 and 2, "Deliver; Manufacture; or with Intent to Deliver Controlled Substance, Schedule 1,2,3" in violation of Neb. Rev. Stat. § 28-416(1)(a) and (2)(b) (Supp. 2023), a Class IIA felony; and count 3, "Possession of Money to be used Violating [§] 28-416(1)" in violation of § 28-416(17), a Class IV felony. The controlled substance in count 1 was marijuana, and the controlled substance in count 2 was THC.

### 1. MOTION TO SUPPRESS

On December 15, 2022, Klipfel filed a motion to suppress evidence obtained during the traffic stop, detention, and arrest. Klipfel alleged that during the traffic stop, he was unlawfully detained, and his vehicle and trailer were unlawfully searched.

The hearing on the motion to suppress was held on February 23 and March 21, 2023. The State and Klipfel's counsel agreed that the issues were the stop of Klipfel's truck and trailer, the search of the truck and trailer, and his arrest. Two witnesses testified and numerous exhibits were received into evidence.

Officer John Hudec of the Lincoln Police Department testified that he was part of a task force with the sheriff's office under Homeland Security and the Criminal Interdiction Unit, "a unit . . . that conduct[s] traffic stops on the Interstate and highways through Lancaster County looking for, specifically, criminal activity including narcotics smuggling, currency smuggling, guns, sex trafficking and such." He had been specifically trained on signs of narcotics smuggling in relation to marijuana and THC vape cartridges.

On April 21, 2022, Officer Hudec was "stationary in the center turnaround at mile marker 394" on Interstate 80, observing eastbound traffic, when he saw a black Ram pickup that had a California license plate pulling a "very large, enclosed, black colored trailer" that had an Oregon license plate; "[w]hat caught my attention was the two different state plates on the vehicle and the trailer." He began traveling eastbound to "catch up to the vehicle" "to run the plates . . . just to check the registration, check to see if they're stolen, and basically everything that we normally do with the vehicle and running a plate." Officer Hudec learned that the California-plated pickup was a rental vehicle. The Oregon plate on the trailer "returned to a specific . . . source area . . . Grants Pass." According to Officer Hudec, that area is "a producer of large quantities of narcotics, specifically marijuana that ultimately enter onto the black market and smuggles across the United States." Officer Hudec also "entered the address associated with that plate into Google Maps and observed that there was a house with approximately a 50 to 75 plant marijuana grow on the north side of the northeast corner of the residence." While he was catching up to the pickup and trailer, Officer Hudec sent a message to Sergeant Jason Mayo with the address for the Oregon plate number. (Sergeant Mayo is a criminal interdiction unit supervisor at the Lancaster County sheriff's office.) Sergeant Mayo later advised Officer Hudec that he looked at a different map which did not show a marijuana grow area at the address associated with the trailer; Officer Hudec did not know which map image was more recent.

While following the pickup and trailer, Officer Hudec observed "several" traffic violations. "[T]he first violation is the passenger side tires [of the trailer] travel onto the white shoulder that's marked for the on-ramp for the traffic entering eastbound from Northwest 48th." Second, the "trailer began to occupy the far south through lane and traveled over the dotted white line into the far south . . . merging off lane, . . . failing to signal that lane change"; "basically the truck and trailer were occupying two different lanes at the same time, unable to maintain lane." Third, the vehicle was "following another vehicle at a very close and unsafe following distance." Fourth, "as the vehicle was on the on-ramp to go southbound on Highway 77, the trailer tires were completely crossed over onto the shoulder over the white line," "[b]asically, driving on the shoulder." Fifth, the "trailer tires are again, driving onto the shoulder onto the white line southbound on Highway 77." The traffic violations were captured on Officer Hudec's cruiser camera. Video and screen shots from the cruiser camera were received into evidence; he testified that the violations "are harder to see in a picture or video," "[b]ut in real life it's much more clear."

Officer Hudec initiated a traffic stop of Klipfel for "[d]riving on the shoulder, unable to maintain lanes, and following too closely." He was wearing a body-worn camera when he approached the passenger side of the vehicle and contacted Klipfel, the driver and lone occupant of the vehicle; the body camera video was received into evidence. Officer Hudec then described what occurred during the stop, while the body camera video was played at the hearing. He testified that Klipfel was "extremely nervous" during the stop, even after he was told that he was only being given a warning; Officer Hudec also testified about the "signs of nervousness" he observed.

The body camera video footage shows that approximately 17 minutes elapsed between the time that Officer Hudec made verbal contact with Klipfel and informed him that he was stopped for "a couple minor violations" and the time the warning was issued. When Officer Hudec first made verbal contact with Klipfel, he asked Klipfel for his driver's license and registration; upon learning that the vehicle was a rental, he asked for the rental agreement. After Klipfel located his driver's license and handed it to Officer Hudec, the officer had Klipfel exit his vehicle and sit in the front passenger seat of the police cruiser while he completed the written warning. In the cruiser, Officer Hudec ran a records check while Klipfel continued to look for the rental agreement on his cell phone. Approximately 11 minutes into the stop, Sergeant Mayo arrived, and Officer Hudec asked him to verify the VIN number on the truck because Klipfel had not yet produced the registration or rental agreement. Sergeant Mayo testified that VIN verification is done "on every traffic stop" "to be sure that the registration matches the VIN number" "to ensure that the vehicles aren't stolen, and they're registered properly." Approximately 12 minutes into the stop, Klipfel pulled the rental agreement up on his cell phone and showed it to Officer Hudec. Two minutes after that Officer Hudec informed Klipfel that he was "waiting for the records to come back." Then Sergeant Mayo came back to Officer Hudec's cruiser with the VIN information, at which point Klipfel engaged Sergeant Mayo in a 1½-minute discussion about VIN stickers and name plates. Once that discussion concluded, Officer Hudec explained the warning to Klipfel and then said, "We're good to go on that side of it."

A few seconds prior to Officer Hudec stating, "We're good to go on that side of it," a beep or chime can be heard on the body camera video. Officer Hudec testified that it was "Sergeant Mayo messaging me on my computer" that there was "probable cause . . . based on narcotics odor." (Officer Hudec had not noticed an odor during his initial contact with Klipfel despite the front

- 3 -

passenger side window being rolled completely down.) Sergeant Mayo testified, "As I was up checking the VIN number for [the] truck the odor of raw marijuana was coming out of the open driver's side window." "Then I leaned up and looked straight down from the window after I smelled the odor of marijuana" and saw a "vape pen battery" with "Emerald Green," "a symbol of marijuana," "in the door of the driver's side." Sergeant Mayo returned to Officer Hudec, spoke for a bit, and verbally said "'7-4', which means the odor of marijuana at the vehicle." Sergeant Mayo returned to his cruiser and waited for Officer Hudec to finish the traffic stop.

After Officer Hudec explained the warning to Klipfel, he said, "We're good to go on that side of it." Officer Hudec then said, "Just a couple questions real quick about the trailer, is there anything illegal in the car, the truck, or the trailer?" Klipfel responded, "No." Officer Hudec asked, "Can I search it?" Klipfel again responded, "No." Officer Hudec then informed Klipfel that they had probable cause for a search. Klipfel was taken out of the front seat of the cruiser, patted down, and placed in the back of the cruiser. Officer Hudec and Sergeant Mayo proceeded with the search of the truck and trailer.

Officer Hudec testified that during the search of the truck, batteries with "Emerald Triangle" on them were found; "Emerald Triangle is three counties in Northern California that is believed to be a highly concentrated marijuana production area for the black market." He and Sergeant Mayo also found vape cartridges, THC vape pens, and $1,473 in cash in the truck. Although Officer Hudec had not noticed a narcotics odor during his initial contact with Klipfel through the passenger window because "the windage [was] just right," he did smell the narcotics during the search of the truck. "[W]hen I was actually in the back area of the truck, the second-row seating, I could smell it," and "then when the THC vape pens were opened up it was really strong." In the trailer, they found "fabricated boxes with 4-by-8 sheets of plywood" and inside the boxes "[t]here's large hockey style bags containing 481 pounds of vacuum sealed raw marijuana and just over 4,200 THC vapor pens, one gram each."

Sergeant Mayo testified that during the search of the truck they found vape pens, cartridges, and oil in an eyeglasses case; it "smelled very, very strongly of raw marijuana." They also searched the trailer and found "large boxes that . . . contained several hundred pounds of high-grade or vacuum sealed marijuana." Sergeant Mayo could not recall if they also found vape pens or cartridges. When asked, "If Officer Hudec's report noted there was over 4,000 vape pens, would you have reason to disagree with that?" Sergeant Mayo responded, "No."

The district court found the testimony of Officer Hudec and Sergeant Mayo "credible in all respects." It also found that "any one of the number of traffic violations observed by Officer Hudec [gave] him probable cause" to stop Klipfel's vehicle, and the odor of marijuana noted by Sergeant Mayo gave probable cause to search the vehicle, and by extension, the trailer. The court therefore denied the motion to suppress.

## 2. STIPULATED BENCH TRIAL

At the stipulated bench trial on May 25, 2023, Klipfel renewed his motion to suppress, with an additional exhibit. He offered exhibit 28 into evidence, "the cartridges found in the sunglasses case and a vape pen" that Sergeant Mayo "claimed was the source of the odor of marijuana within the truck"; Sergeant Mayo "claimed he smelled the odor of marijuana and later on it was testified that it came from a sunglasses case with vape cartridges." Klipfel believed "the odor of marijuana

does not emanate from these items," and "that supports our renewed motion to suppress." The State objected based on relevancy. The district court stated, "I'm not going to let you offer additional evidence on a motion to suppress that's already been ruled on," "[i]f you want to renew your motion to suppress, it'll be based upon what you offered then." Exhibit 28 was not received into evidence. Klipfel's renewed motion to suppress was overruled.

For purposes of trial, the district court received into evidence numerous exhibits, including all exhibits that were received into evidence at the motion to suppress hearing and the bill of exceptions from the suppression hearing. The parties' "Trial Stipulation" was received into evidence as exhibit 27. According to the stipulation, the testimony of Officer Hudec and Sergeant Mayo at trial would be consistent with their testimony from the motion to suppress hearing. The testimony of law enforcement officers at trial would be consistent with information contained in specified exhibits. Law enforcement officers would testify at trial that based upon their training, experience, and expertise, the amount of marijuana and THC located on April 21, 2022, was consistent with commercial drug sales and not personal use. The forensic scientist from the Nebraska State Patrol Crime Laboratory would testify at trial that he was qualified under Nebraska law to test and analyze items for drug chemistry, and he would testify consistent with information contained in exhibit 22 (the laboratory report confirming marijuana).

In its order entered on July 11, 2023, the district court found Klipfel guilty of all three counts. Sentencing was set for September 14.

### 3. Motion to Withdraw, Motion for New Trial, and Sentencing

On August 28, 2023, Klipfel's trial counsel filed a motion to withdraw, alleging that (1) "[a] conflict has become apparent, requiring undersigned counsel to withdraw," and (2) "[Klipfel] has requested undersigned counsel withdraw."

On September 13, 2023, a different attorney from the same law firm filed Klipfel's motion for new trial based on "newly discovered evidence." In support of the motion, Klipfel included a letter from an "audio, video, and image forensic analyst" stating that "further investigation is necessary to provide opinions about possible file trimming" of video footage from Sergeant Mayo's body worn camera. Klipfel asked the district court to continue the sentencing hearing, grant additional discovery as requested by the "digital audio, visual, and image expert," reopen the evidence, and thereafter grant the motion for new trial.

On September 14, 2023, the district court denied trial counsel's motion to withdraw and the motion for new trial. The matter proceeded to sentencing and the court sentenced Klipfel to an aggregate term of 10 to 14 years' imprisonment.

Klipfel appeals.

### III. ASSIGNMENTS OF ERROR

Klipfel assigns that the district court erred by (1) overruling his motion to suppress, (2) denying his counsel the ability to offer additional evidence at trial regarding the motion to suppress, (3) failing to advise him of the effect of entering into a stipulated trial, (4) finding him guilty of each of the charges of which he was accused, (5) refusing to hear and in overruling counsel's motion to withdraw from representing him, (6) refusing to hear and in overruling the motion for

new trial, and (7) convicting him despite the fact that he lacked effective assistance of counsel. Klipfel also assigns that the district court erred by failing to find counsel was ineffective for various reasons; we will set forth those reasons more specifically in our analysis.

## IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Hoehn*, 316 Neb. 634, 6 N.W.3d 487 (2024). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Hoehn, supra*.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024).

An appellate court reviews a trial court's rulings on motions to withdraw as counsel and motions to dismiss appointed counsel and appoint substitute counsel for an abuse of discretion. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

An appellate court applies a de novo standard when reviewing a trial court's dismissal of a motion for new trial without conducting an evidentiary hearing, but it applies an abuse of discretion standard of review to appeals from motions for new trial denied after an evidentiary hearing. *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023).

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. MOTION TO SUPPRESS

Klipfel argues that the district court erred in denying his motion to suppress because there was no probable cause to stop his vehicle, and the officers prolonged the stop beyond the time reasonably necessary to issue the traffic warning.

### (a) Initial Traffic Stop

The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). The Nebraska Supreme Court has long recognized that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *Id.*

Here, Officer Hudec observed Klipfel commit various traffic violations, namely "[d]riving on the shoulder, unable to maintain lanes, and following too closely." Driving on the shoulder is a violation of Neb. Rev. Stat. § 60-6,142 (Reissue 2021). See, also, *State v. Magallanes*, 284 Neb. 871, 876, 824 N.W.2d 696, 700 (2012) ("any crossing of the fog line, even momentarily and inadvertently crossing onto the shoulder, is enough to violate [§ 60-6,142]"). Failure to signal a lane change is a violation of Neb. Rev. Stat. § 60-6,161 (Reissue 2021). And following another vehicle too closely is a violation of Neb. Rev. Stat. § 60-6,140 (Reissue 2021). Any one of the violations observed by Officer Hudec gave probable cause to stop Klipfel.

(b) Time to Issue Warning

Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Barbeau, supra*. This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id.* Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *Id.*

A lawful traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of the stop. *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020). When the mission of an investigative stop is addressing a suspected traffic violation, the U.S. Supreme Court has instructed that the stop may last no longer than is necessary to effectuate that purpose, and authority for the seizure ends when tasks tied to the traffic infraction are, or reasonably should have been, completed. *Id.*

After stopping Klipfel's vehicle for the traffic violations, Officer Hudec proceeded to take steps to issue a warning to Klipfel. Klipfel claims the stop was prolonged beyond the amount of time necessary to issue the warning. He specifically argues that "there was no need to prolong the stop to ascertain the VIN number to issue the warning." Brief for appellant at 22.

The body camera video footage shows that approximately 17 minutes elapsed between the time that Officer Hudec made verbal contact with Klipfel and informed him that he was stopped for "a couple minor violations" and the time the warning was issued. When Officer Hudec first made verbal contact with Klipfel, he asked Klipfel for his driver's license and registration; upon learning that the vehicle was a rental, he asked for the rental agreement. After Klipfel located his driver's license and handed it to Officer Hudec, the officer had Klipfel exit his vehicle and sit in the front passenger seat of the police cruiser while he completed the written warning. In the cruiser, Officer Hudec ran a records check while Klipfel continued to look for the rental agreement on his cell phone. Approximately 11 minutes into the stop, Sergeant Mayo arrived, and Officer Hudec asked him to verify the VIN number on the truck because Klipfel had not yet produced the registration or rental agreement. Sergeant Mayo testified that VIN verification is done "on every traffic stop" "to be sure that the registration matches the VIN number" "to ensure that the vehicles aren't stolen, and they're registered properly." Approximately 12 minutes into the stop, Klipfel pulled the rental agreement up on his cell phone and showed it to Officer Hudec. Two minutes after that Officer Hudec informed Klipfel that he was "waiting for the records to come back." Then Sergeant Mayo came back to Officer Hudec's cruiser with the VIN information, at which point

Klipfel engaged Sergeant Mayo in a 1½-minute discussion about VIN stickers and name plates. Once that discussion concluded, Officer Hudec explained the warning to Klipfel and then said, "We're good to go on that side of it." But seconds prior to making that statement, Sergeant Mayo had notified Officer Hudec about the "narcotics odor."

Although the body camera video indicates that Officer Hudec may have delayed Klipfel in pulling up the rental car agreement on his phone by directing Klipfel to stop using his phone because the officer believed Klipfel to be texting, this action did not preclude Officer Hudec from seeking verification of the VIN number. Officer Hudec therefore did not exceed the permissible scope of the traffic stop, and he did not prolong the traffic stop beyond the amount of time necessary to issue the warning, particularly since he received Sergeant Mayo's notification of the "narcotics odor" seconds prior to completing the warning.

### (c) Probable Cause to Search

Klipfel claims that there was not probable cause to search his vehicle and trailer. He takes issue with any reliance on his alleged nervousness during the traffic stop, and the discrepancy between the two maps as to whether there was marijuana growing on his Oregon property. However, we need not address Klipfel's nervousness or the discrepancy in the maps, because neither are necessary to the finding of probable cause for the search. See *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

Here, the record shows that Sergeant Mayo smelled marijuana coming from the "open driver's side window" before Officer Hudec finished issuing the warning to Klipfel. Because of marijuana's legal status as contraband, a trained officer who detects the odor of marijuana emanating from a vehicle in Nebraska has firsthand information that provides an objectively reasonable basis to suspect contraband will be found in the vehicle. *State v. Lang, supra*. The smell of marijuana provided officers with reasonable suspicion to expand the traffic stop to include investigation of possible criminal activity involving controlled substances. *Id.* Moreover, because the vehicle was readily mobile, the odor of marijuana alone provided officers with probable cause to search the vehicle under the automobile exception to the warrant requirement. *Id.* See, also, *State v. Seckinger*, 301 Neb. 963, 969-70, 920 N.W.2d 842, 847 (2018) ("For decades, this court has consistently held that officers with sufficient training and experience who detect the odor of marijuana emanating from a vehicle have probable cause on that basis alone to search the vehicle under the automobile exception to the warrant requirement.") The odor of marijuana provided Officer Hudec and Sergeant Mayo probable cause for the search.

The motion to suppress was properly denied in this case.

### 2. EXCLUSION OF EXHIBIT 28

Klipfel argues that the district court erred in denying his counsel the ability to offer additional evidence at trial regarding the motion to suppress. Klipfel states he offered evidence of "the brief recording made by S[e]rgeant Mayo of a small portion of the search," and "the court erred in denying his ability to offer the evidence." Brief for appellant at 25.

The record does not support Klipfel's claim that he offered a "brief recording" into evidence. At trial, Klipfel "renewed [his] motion to suppress with an additional exhibit." Klipfel

offered exhibit 28, which he said were the "cartridges found in the sunglasses case and a vape pen," which "is what [Sergeant] Mayo . . . claimed was the source of the odor of marijuana within the truck itself." We note that although exhibit 28 was not received into evidence, it does appear in our record; it is not a video recording, but rather it is a picture of an evidence bag containing physical items.

To the extent that Klipfel challenges the district court's decision not to receive the contents of the evidence bag contained in exhibit 28, that claim also fails. If the defendant wishes to reopen the motion to suppress, the defendant must (1) put the State and trial court on notice of such intention by filing a new motion to suppress at least 10 days before trial or (2) make a showing that the existence of one of the exceptions provided in § 29-822 excuses the 10-day requirement. *State v. March*, 265 Neb. 447, 658 N.W.2d 20 (2003). See, also, Neb. Rev. Stat. § 29-822 (Reissue 2016) (court may entertain motions to suppress after commencement of trial where defendant is surprised by possession of evidence by the state, and where defendant was not aware of grounds for the motion before commencement of trial). Klipfel did not file a new motion to suppress at least 10 days before the trial, and none of the exceptions found in § 29-822 apply to the "cartridges found in the sunglasses case and a vape pen," which "is what [Sergeant] Mayo . . . claimed was the source of the odor of marijuana within the truck itself."

Regardless, as pointed out by the State,

Klipfel cannot show that he was prejudiced by the district court's refusal to receive Exhibit 28 into evidence. At most, this would have shown that the vape pen and cartridges seized from Klipfel's pickup on April 21, 2022[,] did not smell like marijuana at the time of trial on May 25, 2023, over 13 months after the evidence was seized. It's difficult to see how this would have had any impact on the credibility of the testimony and evidence adduced at the suppression hearing, let alone that it would have had such an impact that the district court would have reversed its prior ruling on the suppression motion.

Brief for appellee at 26.

### 3. EFFECT OF STIPULATED TRIAL

Klipfel argues that the district court erred when it failed to advise him of the effect of entering into a stipulated trial. "Klipfel came away with the unwarranted opinion that he may be found not guilty by the district court after the stipulated trial, a position that was clearly unwarranted." Brief for appellant at 28.

As explained by the Nebraska Supreme Court in *State v. Howard*, 282 Neb. 352, 371-72, 803 N.W.2d 450, 467-68 (2011),

A stipulation entered by a defendant can be tantamount to a guilty plea. But this is true only when the defendant stipulates either to his or her guilt or to the sufficiency of the evidence. Howard did not do so. Instead, he merely stipulated to the admission of certain evidence, and then the district court determined whether that evidence was sufficient to convict him of the crime charged. Simply stipulating to the admission of evidence is not tantamount to a guilty plea. Moreover, it is clear from the record that Howard preserved all of the defenses and arguments he raised in his motion to suppress. Where the defendant

has presented or preserved a defense, such as the suppression of evidence, a stipulated bench trial is not tantamount to a guilty plea.

Likewise, Klipfel waived his right to a jury trial and elected to proceed with a bench trial on stipulated evidence. Klipfel did not stipulate to his guilt or the sufficiency of the evidence; in fact, during closing arguments his counsel argued there was not sufficient evidence for a conviction on any of the charges. Moreover, Klipfel preserved all of the arguments raised in his motion to suppress. As in *State v. Howard, supra*, we conclude that Klipfel's participation in the stipulated bench trial was not tantamount to a guilty plea, and the district court did not err in failing to inform him of any constitutional rights he was waiving by participating in the stipulated trial.

### 4. SUFFICIENCY OF EVIDENCE

Klipfel's argument focuses only on the sufficiency of the evidence on count 2, "Deliver; Manufacture; or with Intent to Deliver Controlled Substance, Schedule 1,2,3," (THC). We will limit our discussion accordingly. Klipfel does not dispute that THC is a Schedule I controlled substance. Klipfel argues there was insufficient evidence to convict him on count 2 because "no testing was done." Brief for appellant at 29. "The evidence offered with respect to the possession of marijuana was supported by the stipulation including a lab report," but "[w]ith regard to the [THC], the record is devoid of any mention of lab testing to determine what if any substance was contained in the description of numerous vape cartridges." *Id.*

One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence established guilt beyond a reasonable doubt. See *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). Proof of the identity of a substance by circumstantial evidence, including lay testimony by a person sufficiently familiar with the drug in question, may be sufficient to sustain a criminal conviction resulting from a drug prosecution, so long as this evidence establishes the identity of the drug beyond a reasonable doubt. *State v. Watson*, 231 Neb. 507, 437 N.W.2d 142 (1989); *State v. Nash*, 233 Neb. 318, 444 N.W.2d 914 (1989). Some of the factors to be considered in determining whether the State has met its burden of proving the identity of a controlled substance beyond a reasonable doubt include: (1) the privacy or secretiveness of the transaction, (2) references made to the drug by the defendant and others, (3) testimony by witnesses who have a significant amount of experience with the drug in question, (4) high price paid for the substance, (5) behavior characteristic of sale and use of a particular substance, (6) prior involvement by the defendant in drug trafficking, (7) corroborating testimony by officers or other experts as to the identification of the substance or the expected effects of the substance, and (8) sensory identification of the substance if the substance is sufficiently unique. *State v. Watson, supra*; *State v. Nash, supra*.

In this case, Officer Hudec and Sergeant Mayo testified that they were part of a criminal interdiction unit and had been trained in narcotics. Both testified that THC is the oil from marijuana plants. Sergeant Mayo testified that he found a "vape pen battery pack" with an Emerald Triangle "symbol of marijuana" in the driver's side door of the vehicle. Officer Hudec testified that "Emerald Triangle is three counties in Northern California that is believed to be a highly concentrated marijuana production area for the black market." According to Officer Hudec's and Sergeant Mayo's written reports, multiple THC cartridges or pens were found in an eyeglass case

in the vehicle and a marijuana odor was coming from the case. Officer Hudec's report also states that during the search of the trailer, the officer found more than 4,000 vape pens and "[e]ach one of these Vape pens were 1 gram of THC." Pursuant to the written trial stipulation, the law enforcement officers would testify at trial that based upon their training, experience, and expertise the amount of marijuana and THC located on April 21, 2022, was consistent with commercial drug sales and not personal use. Additionally, an exhibit received into evidence states that text messages were extracted during a search of Klipfel's cell phone, including messages about Klipfel "being on road trips and delivering marijuana and THC concentrates."

The foregoing evidence, viewed in a light most favorable to the State, was sufficient for the trial court to find beyond a reasonable doubt that Klipfel was guilty of count 2.

### 5. COUNSEL'S MOTION TO WITHDRAW

Klipfel contends that the district court erred in refusing to hear and in overruling trial counsel's motion to withdraw.

On August 28, 2023, Klipfel's trial counsel filed a motion requesting that the district court "allow the undersigned counsel to withdraw," alleging that (1) "[a] conflict has become apparent, requiring undersigned counsel to withdraw," and (2) "[Klipfel] has requested undersigned counsel withdraw." The motion was taken up at a hearing on September 14, along with the motion for new trial and sentencing.

At that hearing, another lawyer from the same law firm as trial counsel appeared and argued. This attorney informed the district court that "[s]ome dynamics have occurred such that Mr. Klipfel no longer has faith in [trial counsel]," "[a]nd I have been reassigned to the case to see it through to its fruition." This attorney also stated, "The motion to withdraw was filed partly for that reason," "[a]nd partly also because of the items that were raised in the motion for new trial." The attorney argued that it was "appropriate for us to withdraw from the case so that . . . Klipfel can raise these issues, including any potential ineffective assistance that may have infiltrated this analysis" and so "new counsel" could "raise these issues afresh." The court stated, "If I understand the motions correctly, the reason for the requested withdrawal is because of the potential ineffective assistance of counsel claim that may have given rise to the motion for new trial motion. Based upon that at this time I'm denying the motion to withdraw." After subsequently overruling the motion for new trial, which we discuss further below, the district court heard arguments and sentenced Klipfel.

As pointed out by the State, the motion to withdraw only requested that the initial attorney be allowed to withdraw and that substitute counsel from the same law firm "handled everything after that," and there was "no assertion below, nor has Klipfel asserted on appeal, that [substitute counsel] or the firm itself had an actual conflict of interest that warranted a withdrawal from the case." Brief for appellee at 31. We agree, and we further observe that there was no prejudice to Klipfel by the district court's denial of the motion to withdraw since any concerns related to the possible ineffective assistance of trial counsel and the discovery matters underlying the motion for new trial have been raised and addressed in the present appeal. Accordingly, we find no abuse of discretion in the court's decision to deny trial counsel's motion to withdraw.

## 6. MOTION FOR NEW TRIAL

Klipfel argues that the district court erred in refusing to hear and overruling the motion for new trial.

In criminal cases, motions for new trial are governed by the provisions in Neb. Rev. Stat. §§ 29-2101 to 29-2103 (Reissue 2016). Section 29-2101 sets out seven grounds on which such a motion may be based. Klipfel filed a motion for new trial based on "newly discovered evidence" pursuant § 29-2101(5). In support of the motion, Klipfel included a letter from an "audio, video, and image forensic analyst" stating that "further investigation is necessary to provide opinions about possible file trimming" of video footage from Sergeant Mayo's body worn camera. Klipfel asked the district court to continue the sentencing hearing, grant additional discovery as requested by the "digital audio, visual, and image expert," reopen the evidence, and thereafter grant the motion for new trial.

In *State v. Boppre*, 315 Neb. 203, 222, 995 N.W.2d 28, 46 (2023), the Nebraska Supreme Court stated,

> Section 29-2103 requires all motions for new trial to be "made by written application" and to "state the grounds under section 29-2101 which are the basis for the motion." Additionally, all new trial motions must "be supported by evidence as provided in section 29-2102."
>
> Section 29-2102(1) sets out the type of evidence that will support a motion for new trial based on newly discovered evidence under § 29-2101(5), and it provides that such a motion "shall be supported by evidence of the truth of the ground in the form of affidavits, depositions, or oral testimony." If a motion under § 29-2101(5) is not supported by the required evidence in the required form, a district court need not consider it further and may deny the motion without an evidentiary hearing.

The court has construed the statutory requirement to mandate such supporting documents and to allow dismissal without an evidentiary hearing when no such supporting documents are presented. *State v. Boppre, supra.* The requirement for evidence of the truth of the asserted grounds is not trivial; it is designed, inter alia, to demonstrate the strength of the claim, which in turn determines entitlement to a hearing. *Id.* Thus, even when the allegations in the motion itself set forth a narrative to support a new trial based on newly discovered evidence, the failure to accompany the motion with the type of supporting evidence required by § 29-2102(1) provides a basis for dismissal without an evidentiary hearing. *State v. Boppre, supra.*

Here, the letter attached to Klipfel's motion was not an affidavit, deposition, or oral testimony. Because Klipfel's motion for new trial was not supported by the required evidence in the required form, the district court could deny the motion without an evidentiary hearing.

## 7. INEFFECTIVE ASSISTANCE OF COUNSEL

Klipfel's appellate counsel is different from his trial counsel. Klipfel assigned that the *trial court erred* in convicting him despite the fact that he lacked effective assistance of counsel. And he also assigned that the *trial court erred* by failing to find counsel was ineffective by failing to obtain or review available electronic evidence; by arranging for a stipulated trial without

explaining to Klipfel that it was tantamount to a guilty plea, and without obtaining any benefit from the stipulation; and by failing to timely and appropriately file a motion for new trial.

While Klipfel's claims of ineffective assistance of trial counsel as written appear to erroneously assign error to the "trial court," it is evident that Klipfel seeks to raise and preserve on this direct appeal his three claims of ineffective assistance of trial counsel. We agree with the State that only one of his claims can be addressed on appeal.

(a) General Principles of Law

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

With these standards and general principles in place, we turn to the claims alleged by Klipfel.

(b) Electronic Evidence and Motion for New Trial

Klipfel claims that his trial counsel was ineffective for failing to obtain or review available electronic evidence. He specifically mentions the investigatory tools utilized by law enforcement, including a "Mobile Data Terminal," "Mobile Video and Audio Recording Equipment," "Bing Search," and "Google Maps." Brief for appellant at 32. He claims this electronic evidence would have shown that the traffic stop was pretextual and that the Mobile Video and Audio Recording Equipment was unlawfully deactivated.

Klipfel also claims that his trial counsel was ineffective for failing to timely and appropriately file a motion for new trial based on newly discovered evidence that Sergeant Mayo "apparently modified or deleted his body worn camera footage." *Id.* at 38. He claims the fact that Sergeant Mayo "would manipulate the evidence and not provide a complete copy of . . . his body worn camera reflects on his credibility and whether there was truly probable cause to search" the pickup and trailer. *Id.* And "[t]here is a high probability if it had been properly presented a different outcome would have resulted." *Id.*

In response, the State claims that the record is insufficient to address these claims because "[o]n the record before us, we do not know if there were any electronic records beyond what was adduced at trial, what those records may or may not show, or what effect those records may have had if they had been obtained." Brief for appellee at 36.

Klipfel's claim that trial counsel was ineffective regarding "evidence of an illegal pre-textual stop," brief for appellant at 33, based on the use of maps fails because Officer Hudec had probable cause to stop Klipfel's vehicle after observing him commit traffic violations. See *State v. Draganescu*, 276 Neb. 448, 460, 461, 755 N.W.2d 57, 74 (2008) ("[b]oth the U.S. Supreme Court and this court have rejected 'pretextual' arguments regarding routine traffic stops"; "[i]f an officer has probable cause to stop a violator, the stop is objectively reasonable and any ulterior motivation is irrelevant"). However, we agree with the State that the record is not sufficient to address on direct appeal Klipfel's claims that his trial counsel was ineffective for failing to obtain or review other available electronic evidence and for failing to timely and appropriately file a motion for new trial.

### (c) Stipulated Trial

Klipfel claims that his trial counsel was ineffective for arranging for a stipulated trial without explaining to Klipfel that it was tantamount to a guilty plea, and without obtaining any benefit from the stipulation. This claim of ineffective assistance of counsel fails because, as stated previously in this opinion, the stipulated bench trial was not tantamount to a guilty plea and there was sufficient evidence to support Klipfel's convictions.

### VI. CONCLUSION

For the reasons stated above, we affirm Klipfel's convictions on all three counts. Additionally, we find that Klipfel's claim of ineffective assistance of counsel related to arranging for a stipulated bench trial fails. However, the record before this court is insufficient to address Klipfel's claims of ineffective assistance of counsel related to the electronic evidence and the motion for new trial.

AFFIRMED.